S93A0844. NORTON v. THE STATE.
(435 SE2d 30)

CLARKE, Chief Justice.

James Henry Norton was convicted of the malice murder of Melissa Douglas and sentenced to life imprisonment.[1]

Responding to the defendant's emergency call, police found the victim's body in the apartment she shared with the defendant. The victim had been stabbed repeatedly. Police discovered her four-year-old son sleeping in another room of the apartment. While police were investigating the scene of the crime, the defendant stated that he had been with a former girl friend when the victim called him, "mad" that he was not at home. The defendant stated that the victim was dead when he returned to their apartment.

Expert testimony regarding the blood spattering about the apartment indicated that "the attack was very fast, [and] very forceful." Police were unable to locate the murder weapon, although it was determined that a butcher block of kitchen knives was missing from the victim's apartment. Clothing which the defendant had been identified as wearing on the night of the murder was never located.

The victim's four-year-old son made a videotaped, pre-trial statement, and also testified at trial, that he heard the victim and defendant arguing on the night of the murder, and that he heard the defendant "hurting her in the bedroom." The child testified that when he heard his mother scream, he went to the bedroom door, but that the defendant told him to go to bed.

A number of witnesses testified that the victim and defendant had a tempestuous relationship, fueled in part by the victim's alle-

---

[1] The crime occurred on February 6, 1992. The defendant was indicted in March 1992, and brought to trial on August 31, 1992. The jury returned its verdict on September 9, 1992, and the trial court sentenced the defendant that same day. The defendant did not file a motion for new trial, but filed a notice of appeal to the Court of Appeals. That court transferred the case to us on March 2, 1993. The case was submitted on briefs on April 22, 1993.

giance to her former husband. According to the testimony of the victim's sister, the defendant stated that the victim and her former husband "would be sorry" if they reunited.

The defendant testified in his own behalf that he was with his former girl friend and brother when the crime took place. He contended that the murder was in retaliation for undercover drug transactions he had made on behalf of the Vidalia Police Department.

1. Based on this evidence, and the other evidence adduced at trial, a rational trier of fact could have found the defendant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court did not err in denying the defendant's motion for a directed verdict of acquittal.

2. The defendant argues that the trial court erred in refusing to excuse for cause three potential jurors, each of whom had, to varying degrees, discussed the defendant's case with third parties. In one instance the third party had expressed an opinion of the defendant's guilt. However, each of these jurors stated that he or she had formed no opinion as to the guilt of the defendant and could reach a verdict based on the evidence.

There is no requirement that a potential juror be ignorant of every fact and issue involved in a criminal case. *Brooks v. State*, 244 Ga. 574, 577 (261 SE2d 379) (1979). Rather, the issue is whether the potential juror can lay aside any impressions he might have about the case, and reach a verdict based on the evidence presented at trial. *Irvin v. Dowd*, 366 U. S. 717, 722 (81 SC 1639, 6 LE2d 751) (1961). The record before us shows that the trial court was authorized to find that this criteria was satisfied.

This case is distinguishable from *Lively v. State*, 262 Ga. 510 (421 SE2d 528) (1992), and *Walker v. State*, 262 Ga. 694 (424 SE2d 782) (1993), cited by the defendant. In those cases the potential jurors in question had personal relationships with either the victim or the victim's immediate family. Here, the potential jurors readily admitted that they had spoken about the case to others, some of whom had formed opinions about the defendant's guilt. However, there is nothing in the record to show that the potential jurors were influenced by the opinions of others.

3. The defendant argues the trial court erred in denying his motion in limine to exclude any testimony of the victim's four-year-old son on the ground that the child "does not understand the concept of 'truth,' and is not a competent witness under Georgia law." The defendant did not move for a competency hearing. However, on appeal, the defendant suggests that the trial court had a duty, sua sponte to conduct a competency hearing. In *Sizemore v. State*, 262 Ga. 214, 217

(416 SE2d 500) (1992), we held that OCGA § 24-9-5 (b),[2] "except[s] children solely from a competency challenge based on the allegation they do not understand the nature of an oath." We went on to hold that a competency challenge to a child's testimony may be made on the ground that the child lacks the use of reason, as provided by OCGA § 24-9-5 (a).

In this case the defendant's motion in limine did not request, as did the defendant in *Sizemore,* a competency hearing based on the contention that the child does not have the use of reason. Rather, the defendant requested that the child's testimony be excluded on the bare assertion that the child does not comprehend the "concept of truth." Understanding the truth is one element of understanding the nature of an oath. In this context, OCGA § 24-9-5 (b) excepts a child from a competency challenge. Id.

4. The defendant argues that the trial court erred in admitting in evidence interviews with the victim's son, videotaped by a DFCS caseworker shortly after the murder. These statements by the child were consistent with his trial testimony. The state maintains these interviews were offered in evidence to rebut contentions of the defendant that the child's father had influenced the child's trial testimony. These prior consistent statements by the child met the requirements of *Cuzzort v. State,* 254 Ga. 745 (334 SE2d 661) (1985), and were therefore admissible.

5. The record supports the trial court's finding that statements the defendant made to police officers at the scene of the crime were non-custodial, and therefore admissible even though *Miranda* warnings had not been given. See *Shy v. State,* 234 Ga. 816, 820 (218 SE2d 599) (1975); *Oregon v. Mathiason,* 429 U. S. 492, 495 (97 SC 711, 50 LE2d 714) (1976).

6. Admission of a photograph of the victim while in life was not error. *Davis v. State,* 255 Ga. 598 (10) (340 SE2d 869) (1986).

7. The defendant argues that the trial court erred in qualifying a GBI agent as an expert in the area of blood spatter patterns. We conclude from our review of the record that the trial court did not abuse its discretion in this regard. *Brown v. State,* 245 Ga. 588, 590 (266 SE2d 198) (1980).

8. The defendant maintains the trial court erred in refusing to allow him to ask a witness for the state, on cross-examination, why he refused to speak with him prior to trial. The defendant argued that this line of questioning was necessary to prove the witness' "state of mind." As this question was not relevant to the issues to be tried, the

---

[2] This Code section provides, in part, "in criminal cases . . . in which a child was . . . a witness to any crime, any such child shall be competent to testify, and his credibility shall be determined as provided in Article 4 of this chapter."

trial court did not err in excluding it.

9. As stated above, the defendant maintained at trial that the victim's murder was in retaliation to the undercover work he had done for the Vidalia Police Department. In rebuttal, the state offered the testimony of a criminal investigative analyst with the F.B.I. This witness was permitted, without objection, to identify at length the characteristics of a contract killing in contrast with the characteristics of a domestic homicide. On cross-examination the defendant asked the witness whether individuals who were thought to be "snitches" were ever brutally murdered. On re-direct examination the state asked the witness how many D.E.A. "snitches" had been killed in the previous two years. The defendant objected, arguing that the witness was being asked to testify to the ultimate issue in the case, that is: whether the murder was a contract killing or a domestic slaying. Following a conference out of the presence of the jury, the trial court instructed the jury that it was the ultimate finder of fact in the case, and that the witness' answer to the question would be based on general patterns of homicide and compilations of data. The jury was cautioned that it could not "supplant [its] fact-finding function by this witness's testimony."

We note that the testimony now objected to was given in rebuttal to questions by the defendant on cross-examination. Further, we agree with the trial court that the witness' testimony was not an expression of opinion as to the ultimate issue in the case, compare *Fordham v. State*, 254 Ga. 59, 60 (325 SE2d 755) (1985), and the trial court's limiting instruction made that clear to the jury. Under these circumstances, we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 1993 —
RECONSIDERATION DENIED OCTOBER 22, 1993.

*Samuel D. Ozburn*, for appellant.

*Alan A. Cook, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney*, for appellee.