### S01A0404. LONDON v. THE STATE.
(549 SE2d 394)

HUNSTEIN, Justice.

Keith London was convicted of malice murder, two counts of felony murder, and cruelty to children arising out of the death of two-year-old Briana Cansler. He appeals from the denial of his amended motion for new trial.[1] Finding no reversible error, we affirm.

1. The evidence adduced at trial authorized the jury to find that the victim and her three-year-old sister, Brittany Cansler, were at home with appellant, their mother's boyfriend, when he began abusing the victim. Brittany observed appellant hit the victim and throw her down the staircase. Afterwards, appellant called Brittany's mother and asked that she return home from work because her daughter had been injured. When she arrived at the house the mother found appellant sitting on the couch holding the victim. The victim was gasping for air and her head was swollen. The victim died from blunt head trauma. Brittany, the only eyewitness to the attack, revealed to her mother while she was sitting in the emergency waiting room that appellant had hit the victim and knocked her down the stairs. Appellant denied harming the child and reported to police that she had fallen down the stairs. However, extensive trial testimony from medical personnel established that the victim had been abused prior to the fall and that the fall itself could cause injuries of such magnitude only if the victim had been thrown down the stairs. The numerous doctors who examined the child, including the medical examiner, testified that the victim suffered from shaken infant syndrome and battered child syndrome. She had multiple bruises over much of her body, including her arms, left side, chest, head, ears, and

---

[1] The homicide occurred on November 14, 1995. London was indicted in Cobb County on February 16, 1996 on charges of murder, two counts of felony murder (with one underlying felony being aggravated assault and the other cruelty to children), and cruelty to children. He was found guilty on all charges on August 27, 1996 and sentenced to life imprisonment for the murder and a consecutive 20 years for cruelty to children. The trial court vacated the felony murder convictions as required by law. *Malcolm v. State*, 263 Ga. 369, 372 (434 SE2d 479) (1993). His motion for new trial was filed October 9, 1996, amended June 22, 1998, and denied in part on September 15, 1999 with the remaining issue decided adversely to London on January 12, 2000. A notice of appeal was filed February 10, 2000. The appeal was docketed in this Court on December 1, 2000 and was submitted for decision without oral argument.

anus. The doctors testified that from the circular bruises on her arms, it appeared as if someone had grabbed her very hard; the bruising around her anus was consistent with a direct trauma blow, such as a hard kick with a pointed shoe 'or having a broom stick pushed into the rectum. The victim also suffered a skull fracture on the back of her head, bruising to her brain indicating that she had been struck by something, and hemorrhaging around the thyroid gland. Blood behind her eyes revealed that the victim had been shaken back and forth and the severe bruising of her ears indicated that someone had flung her around while pinching her ears. The jury was also authorized to conclude that this was not the first time the victim had been left in appellant's care and suffered a serious injury. The State adduced evidence which showed that six months earlier, in May 1995, the victim was hospitalized for a head injury which appellant claimed she suffered when she fell off the top of a bunk bed and then had three bicycles fall on top of her. Again, although the child suffered severe injuries, appellant failed to call for emergency assistance. The evidence also demonstrated that appellant's claim of how the injury occurred was deemed by medical professionals to be wholly inconsistent with the gravity and extent of the injuries received. The medical testimony regarding this prior incident also showed that the previous injury was consistent with child abuse. Likewise, medical testimony established that two weeks before her death the victim suffered a fracture to her arm which had been left untreated. Appellant contends the evidence was insufficient to support the convictions because the evidence was entirely circumstantial. "To warrant a conviction on circumstantial evidence, the proved facts shall . . . exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence. Where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. *Robbins v. State*, 269 Ga. 500 (1) (499 SE2d 323) (1998). We conclude that the evidence was sufficient to authorize a rational trier of fact to find appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error, appellant contends that the trial court erred in denying the motion for mistrial that he made after the admission of certain testimony from Julie Dunton, a state's witness. We conclude, however, that the trial court did not abuse its discretion in determining that a curative instruction was adequate to preserve appellant's right to a fair trial, and that the grant of a mistrial was not essential in order to preserve that right. See *Scruggs v.*

*State*, 273 Ga. 752 (545 SE2d 888) (2001).

3. Appellant also contends that the trial court erred in admitting the testimony of Brittany Cansler, who was four years old at the time of trial. More specifically, appellant contends that, because of her age and immaturity, Brittany did not have sufficient reasoning power to answer questions intelligently. At trial, however, appellant challenged Brittany's competency on the ground that she was incompetent as a matter of law because of her infancy. Although a child is subject to a competency challenge on the ground that she does not have the use of reason, see OCGA §§ 24-9-5, 24-9-7; *Norton v. State*, 263 Ga. 448, 449-450 (3) (435 SE2d 30) (1993); *Sizemore v. State*, 262 Ga. 214 (416 SE2d 500) (1992), a child is not incompetent as a matter of law because of her infancy. Accordingly, we conclude that the trial court did not err in denying appellant's motion to prohibit Brittany from testifying on the ground of her infancy.

4. Appellant contends that the trial court erred by admitting hearsay statements made by Brittany that appellant had abused the victim and then thrown her down the stairs. The trial court admitted Brittany's hearsay statements under OCGA § 24-3-16, the child hearsay statute. After appellant's trial, we held in *Woodard v. State*, 269 Ga. 317, 321-323 (496 SE2d 896) (1998), that the child hearsay statute was unconstitutional to the extent it permitted the introduction into evidence of hearsay statements made by a child under the age of 14 describing physical or sexual abuse inflicted on another person. Thereafter, in denying appellant's amended motion for new trial, the trial court ruled that Brittany's statements were nevertheless admissible as prior inconsistent statements under the rationale of *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982).

(a) Appellant's contention that the hearsay statements were not admissible as prior inconsistent statements because Brittany was not available for cross-examination, is without merit inasmuch as our review of the record shows that Brittany answered numerous questions regarding herself, her family, her home, and her pet, and answered several general questions about the crime, testifying, for example, that she, appellant, and the victim were upstairs when the victim died. As for more specific questions regarding the crime, Brittany answered many times that she did not see anything happen or evaded answering the questions. Although Brittany did at one point testify that she did see what happened, she never testified as to any details surrounding her sister's death. Moreover, in response to a question from the prosecutor as to whether she was "okay," Brittany testified that she wanted "to get down. That's all I want to do."

(b) As for appellant's right to cross-examine Brittany, it has been held that the Sixth Amendment "is satisfied if a defendant is given the opportunity to cross-examine a forgetful witness about '(h)is bias,

his lack of care and attentiveness, . . . and even . . . the very fact that he has a bad memory.' " *Brown v. State*, 266 Ga. 723, 725 (470 SE2d 652) (1996), quoting *United States v. Owens*, 484 U. S. 554, 559 (108 SC 838, 98 LE2d 951) (1988). In addition, the United States Supreme Court in *Owens* has held that the constitutional requirements of the confrontation clause are satisfied when the hearsay declarant is present at trial and available for cross-examination. Id. at 558. Under the foregoing standards, we conclude that Brittany was available for cross-examination within the meaning of *Gibbons*,[2] as appellant was free to question her at trial regarding the reasons for her forgetfulness, confusion, and evasion.

(c) Appellant also contends that a proper foundation was not laid for admitting Brittany's prior statements under *Gibbons*. Even if the first prior statement Brittany made to her mother was not admissible as prior inconsistent statements under *Gibbons*, it was admissible under the res gestae exception to the hearsay rule. See *Andrews v. State*, 249 Ga. 223 (290 SE2d 71) (1982). Although we cannot conclude that the numerous other statements would be admissible under that exception, see *Walthour v. State*, 269 Ga. 396, 397 (497 SE2d 799) (1998) (to be admissible under the res gestae exception, the declarant's statement must be the result of a spontaneous reaction, and not the result of reflective thought processes), in order to establish reversible error appellant must show that had Brittany's similar accounts regarding her sister's injuries not been disclosed to the jury, there existed a reasonable probability that the result of the trial would have been different. *Burgeson v. State*, 267 Ga. 102, 104 (475 SE2d 580) (1996). Even assuming, arguendo, that the statements should not have been admitted due to the lack of a proper foundation being laid, we are led to conclude that based on the mother's statement, the medical testimony and the similar transaction evidence, there is no reasonable probability that the disclosure of this additional, cumulative testimony affected the result of the jury's deliberations as it was harmless in light of the overwhelming evidence of appellant's guilt. See generally *Laney v. State*, 271 Ga. 194 (8) (515 SE2d 610) (1999); *Felder v. State*, 266 Ga. 574, 576 (468 SE2d 769) (1996) (under "highly probable test" a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error). When the testimony at issue is reviewed in light of the strength of the evidence outlined above, we find that there is no reasonable possibility that the jury would have

---

[2] Although appellant does not contend that Brittany's in-court testimony was not inconsistent with her prior statements, we note that the record shows that her testimony at trial did contradict her prior statements.

returned a different verdict had the trial court not allowed the testimony. Nor does it implicate any issue of constitutional dimension as the foundation requirement addresses fairness to a witness, not a defendant's right of confrontation. See *Duckworth v. State*, 268 Ga. 566 (1) (492 SE2d 201) (1997). Thus, based upon our weighing of the error "in the context of the entire case," *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976), we conclude that because the challenged testimony did not contribute to the judgment, no reversible error exists.

5. Finally, although appellant contends that his trial counsel was ineffective for two reasons, we conclude that the record shows that the performance of appellant's counsel was not deficient under the standards enunciated in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

*Judgment affirmed. All the Justices concur, except Sears, P. J., who dissents.*

SEARS, Presiding Justice, dissenting.

I cannot agree with the majority that the trial court's error in admitting multiple hearsay statements by Brittany Cansler was harmless. These out-of-court statements pervaded the trial, and were not cumulative of the one hearsay statement that the child made to her mother and that the majority properly finds was admissible. Moreover, although the majority applies the nonconstitutional harmless error standard of *Johnson v. State*,[3] even though the error that occurred at trial was of constitutional dimension, I conclude that the error was not harmless either under the nonconstitutional or constitutional harmless error standard. Accordingly, I dissent.

To begin, I will address the appropriate standard that should be applied in this case for determining whether the error was harmless. At trial, the court admitted numerous out-of-court statements of Brittany Cansler under our Child Hearsay Statute.[4] After London's trial, however, this Court held in *Woodard v. State*[5] that admitting a child witness's hearsay statements into evidence under OCGA § 24-3-16 violated a defendant's right to equal protection.[6] Thus, the trial court's decision to admit Brittany's statements under § 24-3-16 violated London's right to equal protection.

The majority properly attempts to determine whether the trial court's decision to admit the hearsay statements was nevertheless correct by analyzing whether the statements were admissible as

---

[3] 238 Ga. 59, 61 (230 SE2d 869) (1976).
[4] OCGA § 24-3-16.
[5] 269 Ga. 317, 321-323 (496 SE2d 896) (1998).
[6] 269 Ga. at 321-323.

prior inconsistent statements. Once the majority, however, determines that the statements were not admissible as prior inconsistent statements, the trial court's constitutional error is not cured and this Court must therefore determine whether that constitutional error is harmless. In this regard, a constitutional error is harmless " 'if it can be shown to the court beyond a reasonable doubt that the evidence did not contribute to the conviction. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).' "[7] Moreover, " '[t]he fact that there was other sufficient evidence to convict does not make the error harmless; rather, the test is whether the evidence may have influenced the jury's verdict.' "[8]

In the present case, seven witnesses other than Brittany's mother testified about out-of-court statements that Brittany Cansler had made to them that implicated London. Several of these witnesses gave lengthy testimony that far exceeded in detail the one-sentence response that Brittany made to her mother about what happened on the night of the crime and that the majority concludes was admissible under the res gestae exception to the hearsay rule. In this regard, Linda Earnest, a licensed clinical social worker, testified that she counseled Brittany on numerous occasions during a five-month period following the crime. Earnest testified that every time she met with Brittany, Brittany made a statement about her sister's death. Earnest added that Brittany's statements were detailed, elaborate and consistent, and occurred during play therapy aimed at creating a comfortable atmosphere for Brittany. According to Earnest, Brittany told her she was having nightmares and that the dreams had blood in them. Earnest also testified that whenever she met with Brittany, Brittany would tell her that London had hit Briana in the head, face, and neck, and had kicked her as well. Earnest stated that Brittany demonstrated what London did to Briana with a doll, and that in doing so, Brittany hit the doll on the face and neck and dropped the doll and kicked it on the legs and back. Earnest used a doll to demonstrate to the jury what Brittany did with the doll.

In addition to Earnest's testimony, the State also introduced the testimony of George Washington, a child protective social worker with the Cobb County Department of Family and Children Services. Washington testified that he and a police officer conducted a videotaped interview with Brittany several days after the crime. The videotape was played to the jury, and the jury was provided with a 13-page copy of the transcript of the interview. During the interview, Brittany demonstrated where London punched Briana in the face

---

[7] *Jones v. State*, 265 Ga. 84, 86 (453 SE2d 716) (1995), quoting *Moore v. State*, 254 Ga. 674, 677 (333 SE2d 605) (1985).

[8] *Jones*, 265 Ga. at 86, quoting *Moore*, 254 Ga. at 677.

and pointed to a spot on her face to show where blood appeared on Briana's face. Brittany also stated that London sent Brittany and Briana upstairs to play, but that he then came upstairs and punched Briana, that he was throwing things at her, and that he picked her up right before she fell. Later in the interview, Brittany reiterated that at one point in the beating blood was coming out of Briana's face, and she also stated that Briana fell down the stairs "real hard backward"; that London told her Briana was in trouble; and that London also hit Brittany and pulled her hair.

Moreover, Julie Dunton, who was Brittany's foster mother for several months, testified that Brittany stated that when Briana's death occurred, London had sent Brittany and Briana upstairs to play; that London had a visitor and had told Brittany and Briana to be quiet; that Brittany and Briana made some noise; that London came upstairs and hit Briana, causing her to hit her head into a wall; that London then threw Briana down the stairs; and that Briana lay bloody at the bottom of the stairs. Ms. Dunton also testified that Brittany frequently told her that she had nightmares about "a bloody baby at the bottom of the stairs." According to Ms. Dunton, for several weeks after Brittany came to live with her, Brittany told the foregoing story to everyone she saw.

In addition to testifying about Brittany's statements about the crime, many of the witnesses who interviewed Brittany, including the three witnesses discussed above, also testified that Brittany's statements to them were spontaneous, and consistent, and therefore did not appear to be the result of any coaching.

Because seven witnesses other than Brittany's mother testified about statements that Brittany made to them; because these statements were more detailed than the statement she made to her mother and were not merely cumulative of that statement; because these witnesses offered critical, prejudicial testimony regarding the consistency of Brittany's statements; and because one of the statements was videotaped and thus had the potential to significantly impact the jury, I cannot conclude that the improperly admitted hearsay statements were harmless under the standard for determining whether a constitutional error is harmless.[9]

Furthermore, even if I were to apply the nonconstitutional harmless error standard, I could not conclude that the error in this case was harmless. As I have explained, the statements in question permeated the trial, were highly prejudicial, and were not cumulative of other evidence. Because of the extraordinarily prejudicial nature of the hearsay statements, and because of the extraordinary

---

[9] *Jones*, 265 Ga. at 86.

quantity of the inadmissible statements, I cannot conclude that it is highly probable that the error did not contribute to the verdict.[10] In this regard, in adopting the "highly probable" harmless error test in *Johnson,* we quoted with approval from Traynor, What Makes Error Harmless, The Riddle of Harmless Error (1970), to the effect that the "highly probable" test " 'can greatly improve the net worth of the judicial process as it thus holds down excesses either of affirmance that recklessly dampens assurance of a fair day in court or of reversal that needlessly calls for still another fair day at the expense of litigants who are still awaiting their first day in court.' "[11] In light of the severity of the error involved in the present case, our affirmance today " 'recklessly dampens assurance of a fair day in court' " for London.

For the foregoing reasons, I respectfully dissent to the majority opinion.

DECIDED JULY 16, 2001.

*Edwin J. Wilson,* for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Maria B. Golick, Bruce D. Hornbuckle, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General,* for appellee.

---

[10] *Johnson,* 238 Ga. at 61.

[11] *Johnson,* 238 Ga. at 61, quoting Traynor at 50-51.