## A01A1002. SIMMONS v. THE STATE.
(555 SE2d 59)

ANDREWS, Presiding Judge.

Wayne Darryl Simmons appeals from the trial court's denial of his motion for new trial after being convicted by a jury of kidnapping, aggravated assault, and possession of a firearm by a convicted felon.

> When reviewing a conviction, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Any inconsistencies in the victim['s and witnesses'] testimony . . . go to the weight and credibility of the witnesses' testimony; such issues are for the jury to weigh. *Sherman v. State*, 225 Ga. App. 869 (485 SE2d 557) (1997); *Jones v. State*, 220 Ga. App. 236 (469 SE2d 379) (1996). "This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (Citation and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997).

*Taylor v. State*, 232 Ga. App. 383, 384-385 (501 SE2d 875) (1998).

Viewing the evidence with all inferences in favor of the verdict, it was that, on October 29, 1996, after dusk, Veronica Simpson was in her apartment with her fourteen-year-old son and two-year-old daughter when she heard a loud banging at her front door. Upon opening the door, she encountered Simmons,[1] who put a gun in her face and demanded to know where her brother was. When she said she did not know, Simmons said she would tell him or he would kill her.

Ikenyaly Rosser, Simpson's son, came into the room and saw Simmons pointing a gun in his mother's face. Rosser told him if he killed his mother, he would kill him. Simmons then cursed Rosser and told Simpson to take him to where her brother was. He then grabbed her shirt and pushed her out onto the porch. Because she was wearing house shoes, Simpson had her son bring her some other shoes. While Simpson and Simmons were on the porch, her neighbor Angela Rome was on her way out and Simpson told her to watch her children. Rome, who acknowledged having had several beers, did not notify police, but did later get Simpson's children and take them to another neighbor's apartment.

---

[1] At that time, Simpson knew Simmons by his first name only.

Sanchez Traylor, another neighbor, saw Simmons pulling Simpson down the steps and sidewalk and heard Simpson yelling that she did not want to go with him. Traylor saw a gun and called police.

Simpson was pushed into Simmons' car on the passenger side. She could not open the door, and Simmons drove off. Simpson told Simmons about a Vine Street address where she had previously lived with her boyfriend,[2] and Simmons drove there. Although lights were on, Simmons did not get out, but circled the address several times. Simmons then threatened to kill Simpson, and they struggled over the gun. During the struggle, Simmons bit Simpson on the wrist and she bit him on the head. They continued to struggle and fell out of the driver's side of the car. Simmons hit her in the head with the gun, and the clip fell out. She grabbed the clip and ran, but Simmons grabbed her and choked her, retrieving the clip. Simmons then told her he was not going to hurt her and drove off. Simpson ran to a nearby MARTA station, and police and paramedics were called.

The paramedic examined Simpson who said she had been kidnapped, thrown from the car, and hit on the head with a gun. He found an abrasion on Simpson's head with minor bleeding. Simpson refused to be transported to the hospital, but did meet with detectives that evening and give a statement. A warrant was issued for Simmons the next day after detectives determined his last name.

Simmons was arrested on that warrant in March 1997. When arrested, Simmons had in his car a 9-millimeter semi-automatic handgun.

The evidence of kidnapping and aggravated assault was legally sufficient.[3] *Jackson v. Virginia,* supra.

1. Simmons' first enumeration is that the trial court erred in allowing into evidence the fact that he had a gun in his possession when arrested because it placed his character in issue and was not in temporal proximity to the charged crimes.

Simmons relies on *Benford v. State,* 272 Ga. 348 (528 SE2d 795) (2000), in which it was stated that even

> circumstances surrounding an arrest *other than for the crime for which a defendant is on trial* are [not] always irrelevant and prejudicial. *Anderson v. State,* 236 Ga. App. 679, 683 (4) (513 SE2d 235) (1999). [Cit.] However, this Court has indicated that the admission of evidence which shows the commission of another crime may not automatically be

---

[2] Apparently, Simmons was looking for Elton, a/k/a J. R., the father of Simpson's children, but thought he was her brother.

[3] The conviction of possession of a firearm by a convicted felon is discussed in Division 7, infra.

admitted solely on the basis that the evidence was incident to an accused's arrest where the evidence is *wholly unrelated to the charged crime*, the arrest is remote in time from the charged crime, and the evidence is not otherwise shown to be relevant. [Cits.] Just as evidence of the circumstances connected with an accused's arrest is not automatically prejudicial neither is it automatically relevant. Rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence. Thus, "the admission or exclusion of this evidence 'lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.' [Cit.]" [Cit.]

(Emphasis supplied.) Id. at 350 (3).

Here, unlike in *Benford*, the arrest, the circumstances of which were found admissible, was for the crime for which Simmons was on trial. Also, because a handgun was used in the charged crime, Simmons' possession of a handgun at the time of his arrest was relevant and admissible. Compare *Benford*, supra (evidence of a .22 caliber handgun possessed at arrest for another crime not admissible when charged crime committed with shotgun) with *Nealy v. State*, 246 Ga. App. 752, 753 (1) (542 SE2d 521) (2000) (bulletproof vest worn by accused when arrested for aggravated assault with a handgun admissible in aggravated assault trial resulting from multiple weapon shootout 26 days earlier).

There was no error.

2. Simmons contends, in his second enumeration, that the trial court erred in allowing Rosser, "a child witness[,] to testify where the [S]tate failed to prove that he was competent to do so."

At the beginning of the trial, defense counsel made an oral motion in limine, contending that Rosser is "a 14 year old, and we would request the check into his competency. He has several medical and mental disorders, and under the statute I believe it's the court's duty once an objection to competency has been made, to check into his competency. He is, I believe, autistic, . . . [and has] two or three other disorders." No ruling was made at that time.

Simpson, the State's first witness, then testified that her son, Rosser, suffered from a "disorderly conduct problem," seizures, and schizophrenia, the latter of which resulted in his hearing voices. Rosser, however, took three medications for these problems, Ritalin (hyperactivity), Tegretol (seizures), and Haldol (schizophrenia).

Before Rosser was called as a witness, Simmons' counsel asked the court if a competency hearing were necessary on the basis that "he's subject to doing whatever his mother wants and says. . . ." Simmons' counsel also questioned whether Rosser understood the

difference between right and wrong and truth and a lie.

The trial court did then question Rosser outside the presence of the jury. Rosser was introduced to the court by the prosecutor, who mispronounced his name and was corrected by Rosser. The court inquired why Rosser was there, and he responded because "that man had kidnapped my momma." Rosser also responded to the court's inquiry regarding truth and a lie, indicating an understanding of the difference.

Pursuant to OCGA § 24-9-7: "(a) The competency of a witness shall be decided by the court. The court shall by examination decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness, or infancy. (b) If an objection to competency is known, it shall be taken before the witness is examined at all. . . ."

The trial judge is vested with discretion to determine the competency of witnesses, which will not be overruled absent abuse. *Gallagher v. State*, 196 Ga. App. 153, 154 (395 SE2d 358) (1990).

Pursuant to *Sizemore v. State*, 262 Ga. 214 (416 SE2d 500) (1992), a child may no longer be challenged for competency based solely on infancy or solely on the basis that he does not comprehend the nature of an oath. *Norton v. State*, 263 Ga. 448, 450 (3) (435 SE2d 30) (1993) (showing of appreciation of the truth is all that is required).

Everyone is presumed competent to testify. *Flynn v. State*, 255 Ga. 415, 419 (7) (339 SE2d 259) (1986); *Dumas v. State*, 239 Ga. App. 210, 213-214 (521 SE2d 108) (1999). While any witness, including a child, may be challenged on the ground he does not have the use of reason, *London v. State*, 274 Ga. 91, 93 (549 SE2d 394) (2001), having mental disabilities, alone, does not establish such lack of use of reason. Even having been previously judged insane or having had a guardian appointed does not amount to incompetency to testify. *McClain v. State*, 248 Ga. App. 338 (2) (545 SE2d 926) (2001); *Bonner v. State*, 59 Ga. App. 737, 738 (1) (1 SE2d 768) (1939).

It is not apparent, from the motion in limine and other statements of Simmons regarding Rosser, that the court was required to inquire into Rosser's competency, since no specific basis for Rosser not having the use of reason was given, other than his mental disabilities. *Webb v. State*, 187 Ga. App. 348, 350-351 (370 SE2d 204) (1988); see *Roberson v. State*, 214 Ga. App. 208, 209 (2) (447 SE2d 640) (1994).

Further, since the trial court did conduct an inquiry, there has been no abuse of discretion shown in allowing Rosser to testify. *Roberson*, supra; *Gallagher*, supra.

3. The admission into evidence of Simmons' arrest warrant is claimed as error in the third enumeration, although no objection to

its admission was voiced at trial.

While acknowledging that this document should not have been allowed into evidence or out with the jury,[4] the State contends any error was harmless.

We agree. The warrant alleges that Simmons abducted Simpson "by force and threats with a handgun. Ms. Simpson knows the accused as Wayne, and supplied this affiant with a verbal typed statement accusing Wayne of this allegation." Both the officer who obtained the warrant and Simpson testified, as well as Simmons. Simmons acknowledged being with Simpson, but contended there was no gun and they agreed to exchange cocaine for sex. Therefore, the warrant was cumulative of admissible evidence and its admission harmless. *Ansley v. State*, 198 Ga. App. 452, 453 (402 SE2d 73) (1991); *Nelson v. State*, 197 Ga. App. 898, 899 (2) (399 SE2d 748) (1990).

4. Simmons, as his fourth enumeration, claims error in the trial court's allowing Simpson to read, verbatim, the contents of her written statement although the document was not admitted into evidence and in allowing the prosecutor to read the victim's statement during closing argument, because the requirements of *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998), were not met.

This argument, however, was not made below by trial counsel, as acknowledged by appellate counsel. The only objection made below to Simpson's reading her statement was that Simmons would acquiesce in this procedure "[o]nly if we can introduce the transcript [of her testimony during the preliminary hearing]." Trial counsel also objected to her reading the document because it was not the original.

It is argued here, however, that this was "plain error."

> Although this Court will not generally consider issues not properly raised and ruled upon in the trial court, an exception exists in cases of "plain error" which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citation and punctuation omitted.) *Lynd v. State*, 262 Ga. 58, 61, n. 2 (414 SE2d 5) (1992). *Almond v. State*, 180 Ga. App. 475, 478-481 (349 SE2d 482) (1986).

*Thorne v. State*, 246 Ga. App. 741, 743 (2) (542 SE2d 157) (2000). See also *Paul v. State*, 272 Ga. 845, 848 (3) (537 SE2d 58) (2000); *Morrison v. State*, 248 Ga. App. 785, 787 (546 SE2d 312) (2001).

---

[4] As held in *Cain v. State*, 113 Ga. App. 477, 481 (5) (148 SE2d 508) (1966), and *Spence v. State*, 96 Ga. App. 19, 20 (3) (99 SE2d 309) (1957).

This is not such a case. Here, during cross-examination, defense counsel questioned Simpson regarding her prior knowledge of Simmons and attempted to show that her written statement was inconsistent with her preliminary hearing testimony. Also, through his questions and Simmons' testimony, trial counsel presented the jury with Simmons' theory that Simpson had agreed to exchange sex for cocaine and was angry because Simmons would not give her more cocaine.

It was on redirect examination that the State asked Simpson to read her statement, the incident claimed as plain error. Thereafter, on recross-examination, trial counsel elicited from Simpson that she had read and reread her statement and "memorized it pretty much." Further, Simpson acknowledged that, if she recanted her statement, she faced the possibility of being prosecuted for making a false statement.

No "plain error" has been shown. *Buice v. State*, 239 Ga. App. 52, 56 (520 SE2d 258) (1999); *Brown v. State*, 239 Ga. App. 674, 677 (2) (522 SE2d 41) (1999) (repeated viewings by the jury during deliberations of the videotape allegedly showing defendant throwing cocaine out of automobile window not plain error); see also *Armour v. State*, 247 Ga. App. 592, 593 (2) (544 SE2d 516) (2001) (admission of victim's written statement in violation of *Woodard*, supra, was harmless error).

5. Simmons' fifth enumeration is that the trial court erred in "commenting on the evidence and responding to juror's question during deliberation in a manner [that] was prejudicial" to his case. The argument made is that the trial court violated OCGA § 17-8-57, which provides that it is error for a judge in a criminal case, "during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

After the jury had begun deliberating, the following question was sent out: "[w]hat would happen if plaintiff [sic] . . . withdrew her statement, or refused to prosecute?" The question, its import, and suggested answers were discussed by counsel and the court. Simmons' counsel then suggested that the jury be asked, "what they mean by this. I'm not really sure."

The court then advised the jury "we're kind of having a problem understanding exactly. . . ." At this point, the following colloquy occurred:

A juror: Can the State charge her if she drops the charges?
A juror: Your Honor, could I clarify? If when this case was turned over to the D. A. and Veronica Simpson decided not to pursue it any further, would the charges be dropped or is

it too late? Would the State proceed? . . .

A juror: If at any point she decided I just don't want to go through with this anymore and she decided —.

The Court: Well, the question is would the State proceed. *I think that's speculating.*

A juror: What would have happened, would she have been penalized?

A juror: Would the plaintiff [sic] get in trouble if she dropped the charges against the defendant?

A juror: *She didn't say she lied; she didn't say she made a mistake; she just said I wanted to drop it.* Would she have gotten in any trouble for that? . . .

The Court: I see one of the problems is would she and could she. . . .

A juror: Could she?

A juror: Let me give you *another example.* Say someone beat me up and I wanted to press charges for assault or whatever. I did. I went down to the police station, filed a report. A week later I said well, no, I don't want to pursue this.

A juror: Could he have been retaliated against in any way?

The Court: I think the short answer — I may give you a longer answer tomorrow. *But I think the short answer is in the hypothetical as you've given me, if you say no, I've just changed my mind. I don't want to do this, I think the answer is no.*

A juror: That's the answer to the question.

The Court: *And I'm answering specifically the hypothetical that you've given me.*

A juror: We wonder if it was illegal to say I want to drop the charges, not that I lied or I'm admitting anything, good, bad or indifferent. I just want to drop the charges. I don't want to bother anymore.

The Court: It is not illegal to say I want to drop the charges. I'm saying that in the context of whatever one of you just said, that it's not I've committed perjury. I've lied.

(Emphasis supplied.)

This exchange occurred at the end of the day. The next morning, Simmons' trial counsel objected that the trial court had not fully answered the jury's inquiry and requested that the jury be told that, if the victim withdrew her statement, "basically she could be prosecuted for making a false statement for perjury, obstruction of justice, violating his civil rights, those things."

The argument made here regarding OCGA § 17-8-57 is different from the argument made below. While, generally, such an argument

is not considered here for the first time, an exception exists for a violation of OCGA § 17-8-57 which results in "plain error." *Paul*, supra; *Rogers v. State*, 247 Ga. App. 219, 226-227 (543 SE2d 81) (2000).

As discussed in Division 4, supra, Simmons' argument throughout trial was that Simpson was lying and knew that if she withdrew her statement, she could be prosecuted for perjury. In response to this argument, Simpson testified that Simmons' girlfriend had offered her money on four occasions in an effort to get her to drop the charges. She stated that she would not change her story because she would go to jail for perjury if she did.

The court did not answer the jury's question specifically addressed to Simpson's changing her mind regarding proceeding with the prosecution. As stated by the court, the jury's premise was speculative. Although the court did respond to the hypothetical posed by the jury, that could not be said to be an expression of opinion by the trial court on what facts had been proven during the trial or on Simmons' guilt. See *Seidenfaden v. State*, 249 Ga. App. 314, 317 (2) (547 SE2d 578) (2001).

No "plain error" has been demonstrated. *Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986).

6. In his sixth enumeration, Simmons contends that, through its charge to the jury, the trial court allowed the jury to convict him of aggravated assault (Count 2) in a method not charged in the indictment.

> Indeed, a jury instruction can be misleading which gives several definitions of the offense where the accused is charged with only one of those definitions. But if the jury subsequently receives remedial instructions properly confining the offense to that charged in the indictment, no fatal error is present. A limiting instruction that the State must prove the offense as alleged in the indictment can cure the problem.

(Footnotes omitted.) *Brown v. State*, 243 Ga. App. 632, 634 (4) (534 SE2d 98) (2000). See also *Buckalew v. State*, 249 Ga. App. 134, 138 (4) (547 SE2d 355) (2001); *Salahuddin v. State*, 241 Ga. App. 168, 169 (1) (525 SE2d 422) (1999).

This is what occurred here.

7. Enumerations 7 and 8 address Simmons' conviction of possession of a firearm by a convicted felon and are considered together.

(a) Simmons contends that the trial court erred in denying his motion for directed verdict on Count 3, possession of a firearm by a convicted felon, because there was no proof that the Wayne Simmons named in State's Exhibit 14 was the Wayne Simmons then on trial.

State's Exhibit 14 was a certified copy of the 1992 conviction of a Wayne Simmons for sale of cocaine. "Concordance of name alone is some evidence of identity. [OCGA § 24-4-40 (a).] Further, 'in the absence of any denial by [Simmons] and no proof to the contrary[,]' this concordance of name is sufficient to show that [Simmons] and the individual previously convicted were the same person. Accordingly, this enumeration is without merit." (Citations and punctuation omitted.) *Glass v. State*, 181 Ga. App. 448 (1) (352 SE2d 642) (1987). See also *McKenye v. State*, 247 Ga. App. 536, 539 (4) (544 SE2d 490) (2001); *Lewis v. State*, 234 Ga. App. 873, 877 (4) (508 SE2d 218) (1998); *Crawford v. State*, 233 Ga. App. 323, 326 (3) (504 SE2d 19) (1998).

(b) Simmons also argues that the trial court erred in failing to reinstruct the jury, after argument in phase two of the bifurcated trial, regarding the State's burden to prove his guilt beyond a reasonable doubt.

Immediately after the jury returned its verdict on the kidnapping and aggravated assault counts, the second phase of the trial began. After evidence was presented and short arguments were made on the possession of a firearm charge, the trial court instructed the jury on the elements of possession of a firearm by a convicted felon and that violation of the Georgia Controlled Substances Act was a felony. The court then stated, "I'm going to ask you to be governed by the other charges with regard to what your burden of proof is and what the State's burden of proof is, and the other charges that I gave to you the other day and ask you to go back and deliberate on this charge." The time between the court's main charge at the conclusion of the first phase of the trial and this latter charge is represented by only 30 pages of transcript of a total of 878.

Whether, pursuant to *Griffith v. State*, 264 Ga. 326 (2) (444 SE2d 794) (1994), it is error for the trial court to fail to recharge fully on reasonable doubt, presumption of innocence, and other general principles of law after the second phase of the bifurcated trial, as held in *McKenye*, supra at 538 (3), or not, as held in *Smith v. State*, 244 Ga. App. 512, 513 (1) (539 SE2d 504) (2000), any such error here was harmless considering the short period of time between the two charges. *McKenye,* supra at 539; *Smith*, supra at 513-514.

8. In his ninth enumeration, Simmons contends the trial court erred and manifestly abused its discretion in excusing juror Andrews for cause.

During voir dire, Andrews had expressed his opinion that evidence was planted in the O. J. Simpson case and was asked further about his opinion of police officers:

Q. How do you feel about police officers? Do you feel that all police officers are corrupt or do you think some?

A. In Atlanta?

Q. In Atlanta, that's where we're at.

A. I think 75 percent are corrupt.

Q. So if I've got three officers in here, you are going to think at least one or two is corrupt?

A. Probably all three.

In additional questioning, the juror also indicated that the assistant district attorneys prosecuting the case were "capable of doing anything to get a conviction."

The trial court granted the State's motion to disqualify the juror because he had prejudged the case.

The objection voiced below was that, prior to disqualification, the juror must affirmatively state that he cannot be "fair and impartial." This talisman, however, is not the standard by which we judge the exercise of the trial court's discretion in such a situation.

> OCGA § 15-12-172 authorizes a court to replace a juror with an alternate if the juror is discharged for legal cause. Legal cause arises when the court determines, in its sound discretion, that the juror holds an opinion so fixed and definite that he or she cannot lay it aside and decide the case on the evidence presented and the court's charge. "A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference."

(Footnotes omitted.) *Ganas v. State*, 245 Ga. App. 645, 648 (3) (537 SE2d 758) (2000). See also *Kirkland v. State*, 271 Ga. 217, 219 (518 SE2d 687) (1999); *Boyle v. State*, 241 Ga. App. 883, 884 (1) (528 SE2d 303) (2000).

Here, no equivocation was voiced by the juror and we find no abuse in the trial court's exercise of her discretion to excuse the juror. "'[A] trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors.' [Cit.]" *Mulvey v. State*, 250 Ga. App. 345, 348 (3) (551 SE2d 761) (2001).

9. The remaining three enumerations address trial counsel's claimed ineffectiveness and are addressed together.

To reverse a conviction upon a claim of ineffectiveness of counsel, the defendant has the burden of proving not only that counsel's performance was deficient, but that the deficiency so prejudiced his defense that there is a reasonable probability that the outcome of the trial would have been different in the absence thereof. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). We will not disturb a trial court's finding of effective assistance of coun-

sel unless clearly erroneous. *Thomas v. State*, 246 Ga. App. 448, 449 (1) (540 SE2d 662) (2000).

(a) Simmons contends that trial counsel's reference to him as a "dog" during his closing argument did not meet the standard of effective assistance, relying on *Kornegay v. State*, 174 Ga. App. 279 (329 SE2d 601) (1985).[5]

Trial counsel testified at the motion for new trial hearing that, by this reference, he was referring to Simmons' propensity to chase women and do drugs, which was part of his trial strategy. Simmons testified that he and Simpson had agreed that she would give him oral sex in exchange for cocaine and he acknowledged having done the same thing with another woman.

This case is factually similar to and controlled by *Mize v. State*, 269 Ga. 646, 655 (11) (501 SE2d 219) (1998), in which trial counsel referred to his client as a "redneck" and a "racist," and the Supreme Court found this a reasonable attempt to persuade the jury that, while Mize might be a racist, he was not a murderer.

That Simmons and appellate counsel now disagree with this strategy does not mandate a finding of ineffective assistance of trial counsel, *Ross v. State*, 231 Ga. App. 793, 799 (7) (499 SE2d 642) (1998); *McGarity v. State*, 212 Ga. App. 17, 22 (7) (440 SE2d 695) (1994), and we find the trial court's conclusion that this trial strategy did not amount to ineffective assistance of counsel was not clearly erroneous. *Bolick v. State*, 244 Ga. App. 567, 573 (1) (h) (536 SE2d 242) (2000).

(b) Simmons also challenges trial counsel's effectiveness because he did not call a medical doctor to testify or subpoena medical records regarding a prior injury to his leg which caused a limp.

Trial counsel testified that he believed the issue of a limp was a "collateral issue" to the main issue of whether Simmons entered the apartment and committed the charged acts. Trial counsel did allude to the limp in his opening argument and questioned Simmons about it, but decided not to call a doctor. He had previously tried such a tactic with a client in another case and found it ineffective. Therefore, as a matter of trial strategy, trial counsel chose not to do so here.

Again, while appellate counsel and Simmons may now disagree with this decision, that does not make it ineffective assistance of counsel, and denial of the motion for new trial on this basis was not clearly erroneous. *Bolick*, supra; *Ross*, supra.

---

[5] This case is not binding precedent, having been fully concurred in by only four judges of this Court, with one judge concurring in the judgment only and four judges dissenting. Court of Appeals Rule 33 (a); *Cooper v. State*, 189 Ga. App. 286, 288 (375 SE2d 505) (1988) (Deen, P. J., concurring specially). Further, the racist language used there had no justifiable purpose and is not comparable to Simmons' situation.

(c) Finally, Simmons contends that trial counsel was ineffective for failing to object to admission of the arrest warrant, the reading into evidence of Simpson's statement by her, and reading by the prosecutor of it during closing argument.

As held in Division 4, the latter two grounds do not amount to "plain error," even though not objected to below. As also discussed in that Division, Simmons' trial strategy was to argue that Simpson had memorized her original statement to police and recited it by rote in order not to face charges for perjury.

While, during the motion for new trial hearing, trial counsel acknowledged that, in hindsight, he should have objected to the rereading of Simpson's statement and admission of the arrest warrant into evidence,

> "[t]he standard regarding ineffective assistance of counsel is 'not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance.' (Cits.) In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy." [Cit.] "Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight (or) result." [Cit.]

*Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

The trial court's finding that Simmons received effective assistance of counsel on these grounds was not clearly erroneous. *Slade*, supra at 308; *Silcox v. State*, 241 Ga. App. 845 (528 SE2d 271) (2000).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED OCTOBER 3, 2001 — 

*Jodi Dick*, for appellant.

*Paul L. Howard, Jr., District Attorney, George W. K. Snyder, Jr., Shawn D. McAllister, Assistant District Attorneys*, for appellee.