A02A0675. WILLIAMS v. THE STATE.
(568 SE2d 761)

ANDREWS, Presiding Judge.

Troy Truelle Williams, convicted of one count of armed robbery and six counts of kidnapping, appeals from the trial court's denial of his motion for new trial, contending that the trial judge violated OCGA § 17-8-57 and that trial counsel was ineffective for failing to move for a mistrial because of this alleged violation.

1. Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was that Williams had previously been employed as a night manager by RMS Management Services, which owned several Shoney's franchises in Macon. Tebben cleaned the carpets in several Macon Shoney's restaurants for RMS during 1997. Generally, he did each restaurant at least once a month and dealt with the night manager, including Williams at the Ingleside/Riverside and Gray Highway locations. Tebben would arrive around closing time, usually 11:00 p.m. or midnight, and clean while the night manager and his employees closed up. He left his invoice for the work with the night manager.

Late on the evening of November 26, 1997, around midnight, Tebben arrived at the Shoney's on Harrison Road to clean. As he was opening the front door, he saw Williams walking toward the doors. As Tebben walked in, Williams followed right behind him and went into the restroom. Tebben recognized Williams and spoke to him, but Williams did not make any response. Tebben proceeded to give his invoice to Caley, the night manager, and commented on Williams, but Caley did not know him. Tebben then went back outside to get his equipment, which took a couple of minutes.

While Tebben was doing this, Williams emerged from the restroom wearing a ski mask and carrying a gun. Williams then directed Caley to go to the back, the location of the manager's office and the safe containing the day's receipts. As they proceeded to the back, Williams directed five other employees to fall in and made all of them except Caley go into a storage locker. Williams then directed Caley to put the contents of the safe in a bag, except he did not want coins. Caley did not have a bag, so he wrapped the money in a sweatshirt and gave approximately $3,200 to Williams. Pursuant to Williams' directions, he then let him out the rear door, and police were called. Tebben identified Williams to police and picked his photo from a six-man photo spread.

When police attempted to arrest Williams on the morning of November 27, as he was driving his girlfriend, Jasmine Williams, to work at another Shoney's, Williams drove away at a high speed and, after wrecking the vehicle, ran on foot. Williams was taken into custody, and, upon searching him, officers found $1,550 in cash in Williams' pockets. A portion of the money was uncirculated bills and sequentially numbered.

Williams told officers he had gotten part of the money gambling and several hundred dollars from his girlfriend. He also contended that he had been banging on the door of a former girlfriend's house at the time of the robbery.

The evidence was legally sufficient. *Jackson v. Virginia*, supra; *Herndon v. State*, 253 Ga. App. 543, 546 (1) (b) (559 SE2d 749) (2002).

2. In his first enumeration of error, Williams contends that the trial court "improperly stated his opinion concerning the date and time of the robbery."

After the jury had been deliberating for a period of time,[1] the jury returned to the courtroom with a question. This question is not contained in the record or transcript, but in response to it, the following colloquy occurred:

> THE COURT: . . . . *I can't comment on the facts of the case*, and it's not appropriate for the Court to answer questions like this or to give you any comment about the facts in the case.
> THE FOREPERSON: Okay.
> THE COURT: The collective wisdom of 12 jurors who've heard the case and listened to the evidence is the source from which you need to answer these questions if you think they're relevant. I'll be glad to answer any questions you have in regard to the law . . . but any questions as — *answering any questions regarding what the witnesses said or what the evidence was would not be appropriate for me to give.*
> THE FOREPERSON: May I just ask a question?
> THE COURT: Yes, ma'am.
> THE FOREPERSON: . . . We heard a couple of different things. They talked about the late-night hours of the 26th, the early morning of the 27th, but I kind-of think that it was the late-night hours of the 25th and the early-morning hours of the 26th, and he was arrested approximately 32 hours . . . after the robbery. Is that — *can you answer that question?*
> THE COURT: *No.*
> THE FOREPERSON: Not really?
> THE COURT: No, ma'am. . . . Y'all will have to work that out. Y'all heard it just like I did.
> THE FOREPERSON: Okay.
> THE COURT: There are 12 of y'all and one of me, so I'm not going to comment about that. You all can recall that. I'd simply say to look to the indictment itself and the charges . . . and what's on the face of the indictment. *And I will say as a matter of law, you're not required to find that it occurred on a*

---

*particular day — all right? That is not a — that's not mate-rial that it occurred on that particular day.*

THE FOREPERSON: But he wasn't arrested, like within eight hours or nine hours after the time of the incident. It was a full day later.

THE COURT: *I have a strong opinion as to what the evidence showed on that point, but I can't share it with you.*

THE FOREPERSON: Okay.

(Emphasis supplied.)

There was no objection voiced by defense counsel to this exchange. Pursuant to *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000), however, we consider first whether the italicized statements constituted a violation of OCGA § 17-8-57 and, if so, whether it was plain error, as urged by Williams. *Carroll v. State*, 255 Ga. App. 230, 232 (4) (564 SE2d 833) (2002); *Archie v. State*, 248 Ga. App. 56, 57 (1) (545 SE2d 179) (2001).

The indictment charged that the incidents occurred "on or about the 26th day of November, in the year 1997." The italicized statement in the colloquy regarding the date not being a material allegation of the indictment is, therefore, an accurate statement of law and not a comment on the evidence prohibited by OCGA § 17-8-57. *Frazier v. State*, 252 Ga. App. 627, 629 (2) (557 SE2d 12) (2001).

Regarding the last italicized statement, it must be considered, not only in the context of the entire colloquy, but in the context of the evidence presented. The *only* indication that the event happened on the evening of November 25 and morning of November 26 was Williams' cross-examination of Officer Washington, which apparently created some confusion regarding the date.[2] As Williams' trial counsel testified during the motion for new trial hearing, "clearly from the defense counsel's perspective, confusion is a good thing," and, after the now complained-of instruction, "I still have no objection. In fact I have got my confusion, and I'm hoping somebody is doing something good with it."

The objected-to statement, far from expressing, or even intimating, an opinion regarding what the evidence showed, merely stated that the court had an opinion which he could not share, as he had steadfastly refused to share it throughout the colloquy. There was no violation of OCGA § 17-8-57. *Simmons v. State*, 251 Ga. App. 682, 687-689 (5) (555 SE2d 59) (2001).

*Nealy v. State*, 230 Ga. App. 747, 749 (3) (498 SE2d 119) (1998), relied upon by Williams, is inapposite. There, the question posed by

---

[2] All of the victims were consistent in their testimony that it occurred on the evening of November 26 into the morning of November 27.

the jury was whether cocaine residue had been found in Nealy's pocket upon arrest. The court, properly, refused to answer. On appeal, the argument was that the question was tantamount to a request for a recharge on the law, which the court erred in refusing to give.

3. Our decision in Division 1 makes it unnecessary to consider Williams' second enumeration of error alleging ineffective assistance of counsel.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 27, 2002 —
RECONSIDERATION DENIED JULY 15, 2002.

*Jon-Selby R. Hawk*, for appellant.
*Howard Z. Simms, District Attorney, Henry O. Jones III, Assistant District Attorney*, for appellee.