In the Supreme Court of Georgia

Decided: November 2, 2015

S15A0739. RUTLEDGE v. THE STATE.

MELTON, Justice.

Following a jury trial, Kisha "Kee" Rutledge was found guilty of malice murder, aggravated assault, conspiracy to commit armed robbery, and various other offenses in connection with a plot to rob Keith Brown that ended with Brown being shot and killed.[1] On appeal Rutledge contends that the evidence

[1] On January 16, 2009, Rutledge was indicted for malice murder, three counts of felony murder (predicated on aggravated assault and two instances of criminal attempt to commit armed robbery), aggravated assault , possession of a firearm during the commission of a felony, criminal attempt to commit armed robbery, and conspiracy to commit armed robbery. Following a February 7-11, 2011 jury trial, Rutledge was found guilty on all counts. On February 14, 2011, the trial court sentenced Rutledge to life imprisonment for malice murder, ten years concurrent for both criminal attempt to commit armed robbery and conspiracy to commit armed robbery, and five consecutive years for possession of a firearm during the commission of a felony. The felony murder counts were vacated by operation of law (Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the trial court merged the remaining aggravated assault count for sentencing purposes. Rutledge filed a motion for new trial on February 15, 2011, which she amended with new counsel on August 9, 2013. The trial court denied the motion on December 20, 2013. Following the payment of costs, Rutledge's timely appeal was docketed in this Court for the April 2015 Term

was insufficient to support the verdict and that the trial court erred by admitting into evidence the out-of-court statement of a State's witness as a prior inconsistent statement. For the reasons that follow, we affirm.

1. Rutledge contends that the evidence was insufficient to support the verdict because the testimony of her co-defendant, Stephen Woods, was not sufficiently corroborated. We disagree.

Under former OCGA § 24-4-8, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness."[2] Furthermore,

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that [s]he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

---

and submitted for decision on the briefs.

[2] Georgia's new Evidence Code, effective for trials conducted on or after January 1, 2013, also provides that to sustain a felony conviction, the testimony of an accomplice must be corroborated. See OCGA § 24-14-8.

(Citations and punctuation omitted.) Threatt v. State, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013).

Here, viewed in the light most favorable to the jury's verdict (see Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979)), the evidence reveals that Rutledge ran an escort service called "Atlanta Keys," and that Brown was one of Rutledge's best customers for a four to five month period prior to his death, often spending thousands of dollars per week on escort and prostitution services. On one evening during this time period, one of Brown's neighbors overheard Brown say to someone named "Kee" on the telephone that "he was not going to pay" for the escort that had visited him earlier in the evening because the woman was "not what he had ordered." Also, around May of 2007, Brown began to develop an independent relationship with Robyn Liberty Nixon, one of Rutledge's escorts. Although Brown set up his initial "dates" with Nixon through Rutledge and her escort agency, eventually Brown began to call Nixon directly for dates, which meant that Rutledge would not receive any of the money that she otherwise would receive for setting up the "dates" through her escort service. Nixon was concerned that Rutledge would find out about Brown calling her directly for dates without paying Rutledge, but

3

Brown told Nixon that he had already informed Rutledge that he had been contacting Nixon directly.

According to Rutledge's co-defendant, Woods, on the evening of June 11, 2007, he, Rutledge, Jeff Dulcio, and Michelle Morrison all met in a hotel room, and Rutledge received a call from Brown requesting escort services. Woods, Rutledge, and their compatriots from the hotel room then started driving to Brown's apartment complex. On the way there, Rutledge began talking to the crew about "pulling off a little lick," a robbery, as Rutledge believed that Brown kept $40,000 in cash hidden in his home and she was upset that Brown had not paid her for a previously ordered service. Rutledge had given Dulcio a handgun at the hotel room earlier that evening, and, when the crew arrived at the apartment complex, Morrison gave Dulcio a pair of latex gloves to wear. Woods went to the front door of Brown's apartment while Dulcio went up to the apartment balcony with the gun that Rutledge had given him. Dulcio then shot Brown five times, killing him. When Woods heard the gunshots, he fled the scene with Rutledge and Morrison in the car in which they had arrived, leaving Dulcio behind. Dulcio called Rutledge, asking her to come and pick him up, and Woods overheard this conversation on speakerphone.

According to one of Rutledge's drivers for her escort service, Rutledge did in fact arrange for him to pick up Dulcio later that same night. Rutledge told the driver that he needed to "get up there quick" to pick up the party in question. When this driver learned the following day on the news about the Brown shooting, he asked Rutledge whether she had sent him to pick up a man who had just killed someone. Rutledge replied "yes."

Police interviewed Nixon in connection with their investigation of Brown's murder, and, after Rutledge learned that Nixon had spoken to the police, but without knowing what Nixon might have said to the police, she threatened Nixon by holding a gun to her head and saying, "Bitch. . . what have you done[?] . . . [Y]ou told . . . [T]hat bitch told the police about me." Rutledge then fled Atlanta, where she remained on the run for a little over two years until she was eventually captured and arrested for Brown's murder in Houston, Texas on August 26, 2009.

Contrary to Rutledge's assertion that Woods' testimony was uncorroborated, the evidence outlined above shows that Woods' testimony was sufficiently corroborated to prove Rutledge's involvement in the attempted robbery and murder of Brown. Specifically, independent evidence from

5

Rutledge herself and from one of Brown's neighbors showed that Rutledge knew that Brown had lots of money and that Brown owed her money for unpaid escort services. Additional independent evidence showed that Rutledge knew that Dulcio, who, according to Woods, both planned and participated in the robbery with Rutledge, had been involved in a murder and that Rutledge sent a driver to pick him up on the night that Brown was shot; that Rutledge threatened one of her escorts with a gun after the murder when she suspected that the escort had spoken to police about her; and that she fled Atlanta when she knew that police could have been looking for her in connection with Brown's murder.

The evidence was sufficient to enable a rational trier of fact to find Rutledge guilty of all of the crimes of which she was convicted beyond a reasonable doubt. Jackson, supra. See also OCGA § 16-2-20 (parties to a crime); Mitchell v. State, 279 Ga. 158, 159 (1) (2005) ("The jury d[oes] not have to find that the corroborating evidence was itself sufficient to support the verdict, or that the evidence matched the testimony of the accomplice in every detail. Slight evidence identifying appellant as a participant in the criminal act [is] sufficient corroboration") (citation omitted).

2. Rutledge argues that the trial court erred by admitting into evidence the

out-of-court statement of Alison "Honey" Peditto, another one of Rutledge's Atlanta Keys escorts, as a prior inconsistent statement. Specifically, Rutledge claims that the State failed to lay a proper foundation for the admission into evidence of Peditto's June 2007 statement to police, in which she stated that Rutledge told her that she was "going to send her own people in [to Brown's apartment] to get [Brown's money]," because the State never confronted Peditto about the substance of her statement to police during her testimony. However, pretermitting the question whether the trial court erred in admitting the statement, any error in its admission was harmless. Indeed, even if the statement amounted to improper hearsay rather than a properly admitted prior inconsistent statement, it was largely cumulative of Woods' testimony that Rutledge discussed with him her plans to send him and his compatriots from the hotel room to rob Brown at his apartment because Brown owed her money.[3] Under these circumstances, we find the admission of Pedito's statement to be harmless.

---

[3] Also, aside from its cumulative nature, the substance of Pedito's statement need not be considered in any analysis relating to the sufficiency of the corroboration of Wood's testimony to support Rutledge's conviction. In this regard, as shown in Division 1, supra, this Court did not consider the substance of Pedito's statement in reaching its conclusion that Woods' testimony was sufficiently corroborated by independent evidence to sustain the conviction.

7

See Smith v. Stacey, 281 Ga. 601, 601-602 (1) (642 SE2d 28) (2007) (Holding that "[t]he admission of hearsay testimony [was] harmless when it [was] cumulative of legally admissible evidence showing the same fact"); London v. State, 274 Ga. 91, 94 (4) (c) (549 SE2d 394) (2001) (admission of hearsay that was cumulative of other evidence elicited at defendant's trial was harmless in light of overwhelming evidence of defendant's guilt); Mitchell, supra, 279 Ga. at 159 (1) (independent corroborating evidence need not match testimony of accomplice "in every detail").

Judgment affirmed. All the Justices concur.