303 Ga. 719
FINAL COPY

S18A0203. PUCKETT v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Kevin Randolph Puckett was found guilty of malice murder, felony murder, and family violence aggravated assault in connection with the shooting death of his father, Luther.[1] On appeal, Puckett contends that the trial court erred in (1) allowing a photograph of certain books to be admitted

---

[1] On May 4, 2009, Puckett was indicted for malice murder, felony murder predicated on aggravated assault (see OCGA § 16-5-21 (a) (1)), and family violence aggravated assault (see OCGA § 16-5-21 (a) (2) and (i)). Following an August 16-24, 2012 jury trial, Puckett was found guilty on all counts. On August 29, 2012, the trial court sentenced Puckett to life imprisonment for malice murder and twenty consecutive years for family violence aggravated assault. The trial court purported to merge the felony murder count with the malice murder count for sentencing purposes, but the felony murder count was actually "vacated by operation of law" rather than "merged" with the malice murder count. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Puckett filed a motion for new trial on August 28, 2012, which he amended on May 5, 2016. Following a September 7, 2016 hearing, the court denied the motion on February 3, 2017. Following the payment of costs, Puckett's timely appeal was docketed in this Court for the term beginning in December 2017 and submitted for decision on the briefs.

into evidence at trial and (2) allowing improper bolstering of the statements of a State's witness at trial. Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, on April 4, 2008, Puckett returned home in the evening after work to the house in which he lived with his parents, Luther and Irene. At that time, Puckett's son, Austin, who was almost three years old, was also staying at the home. Irene made some pizza for dinner and brownies for dessert, and she then left to do some shopping. At some point while Irene was out shopping, Puckett, who had a turbulent and troubled history with his father, got into an argument with Luther about the brownies that Irene had made. Puckett then shot Luther six times with a semi-automatic Glock 31 .357 handgun, killing him. Luther was shot through his right eye, right cheek, his chest, left arm, the right side of his back, and his right shoulder. Austin heard the argument and witnessed the shooting.

When Irene returned from shopping, she found her husband dead and called 911. When police arrived, Puckett was holding his son while standing with Irene in the front doorway of the house. Police asked Puckett to sit down at the kitchen table and to give Austin to Irene, which he did. Puckett initially

told police that he was not at home at the time of the murder and that he had taken his son to a Chick-fil-A, but surveillance footage from the Chick-fil-A and other evidence contradicted this story, and Puckett later admitted that he lied.

When Puckett's sisters arrived at the house on the night of the murder to find out what was going on, Austin told them, "My daddy shot grandpa pow-pow." Austin also told Puckett's sisters that Puckett had shot "grandpa" in the face. Police found a black Glock handgun in the nightstand beside Puckett's bed that smelled like it had been recently fired, and testing of the bullets recovered from Luther's body and the .357 round shell casings found at the scene revealed that they had been fired from the Glock found in Puckett's bedroom. Puckett was arrested on the night of the shooting.

The day after Puckett's arrest, Austin spontaneously exclaimed to Irene, "Daddy shot grandpa." Puckett himself also later admitted following his arrest that he remembered retrieving his gun from upstairs, shooting the gun, and hiding the gun when he "realized [that his] father was dead." Puckett also called one of his sisters after his arrest and told her, "I didn't mean to kill him. I only

wanted to hurt him." At Puckett's 2012 jury trial,[2] then seven-year-old Austin testified about witnessing Puckett shoot his grandfather.

The evidence was sufficient to enable a rational trier of fact to find Puckett guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Puckett claims that the trial court erred by admitting into evidence a photograph taken by police on the night of Puckett's arrest that depicted several books on a bookshelf in Puckett's bedroom. Among the books on the shelf with titles such as "The Colossal Book of Mathematics," "Money," "Hyperspace," "Beyond Einstein," "Lifetime Guide to Money," "Germs," and "Spycraft," were also books entitled "True Crimes" and the "A to Z Encyclopedia for a Serial Killer." Puckett claims that this photograph should have been excluded as irrelevant and as unduly prejudicial, because it did not provide any specific connection between Puckett and Luther's murder and because the two crime-related books depicted in the photo impugned Puckett's character by implying that he had an interest in killing people.

---

[2] Because this case was tried before January 1, 2013, the provisions of Georgia's old Evidence Code, rather than our new Evidence Code, apply.

However, pretermitting the question whether the trial court erred by allowing this photograph into evidence, we find its admission to have been harmless. In light of the overwhelming evidence of Puckett's guilt, including Austin's eyewitness account and Puckett's own admission to wanting to hurt his father and remembering retrieving a gun, shooting it, and hiding it after realizing that his father was dead, we find that no harm resulted from the admission into evidence of this single photograph depicting two crime books among several other books dealing with different topics. See, e.g., McClure v. State, 278 Ga. 411 (2) (603 SE2d 224) (2004).

3. Puckett asserts that the trial court erred in allowing improper bolstering at trial of Austin's statements about Puckett shooting Luther without Austin's veracity having first been challenged by Puckett on cross-examination. More specifically, he claims that testimony from a licensed psychologist who had treated Austin since he was three years old and to whom Austin had told in 2009 and 2010 that Puckett had shot Luther should not have been admitted at trial. In this connection, under Georgia's old Evidence Code, a witness's prior consistent statements were

admissible only where (1) the veracity of a witness's trial testimony

5

has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination . . . . [And] a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross examination. . . . Thus, to rebut a charge that a witness is motivated or has been influenced to testify falsely or that his testimony is a recent fabrication, evidence is admissible that he told the same story before the motive or influence came into existence or before the time of the alleged recent fabrication. In those circumstances, the prior consistent statement is defined as not hearsay . . . and thus is admitted into evidence.

(Punctuation and footnotes omitted.) Woodard v. State, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998), overruled on other grounds by Bunn v. State, 291 Ga. 183 (728 SE2d 569) (2012). See also Cowart v. State, 294 Ga. 333 (4) (a) (751 SE2d 399) (2013).

Here, contrary to Puckett's assertion that he did not place Austin's veracity in issue during cross-examination such that Austin's psychologist could testify to Austin's prior consistent statements, the record reveals that he did in fact do so. Specifically, Puckett raised the issue that Austin's testimony at trial may have been improperly influenced by his recent conversations with the prosecutor in 2012 prior to trial. During Puckett's cross-examination of Austin, Puckett asked Austin about his conversations with the prosecutor to determine

if "anybody [told Austin] what to say." He also questioned whether Austin might have been fabricating his more recent story on direct examination about Puckett using a "black" gun to shoot Austin's grandfather by asking him whether he remembered previously telling an interviewer at the Child Advocacy Center that the gun involved in the incident was actually a "pink" one rather than a "black" one. Under such circumstances, we find no abuse of discretion in the trial court's decision to allow Austin's psychologist to testify about a prior consistent statement that Austin made in 2009 to his psychologist in which he said that Puckett had "banged [Luther] with a gun" and in 2010 when Austin told the psychologist "My father killed my grandfather." See, e.g., Kidd v. State, 292 Ga. 259 (2) (736 SE2d 377) (2013).

In any event, even if the trial court had erred in allowing the psychologist to testify about Austin's prior consistent statements, the error would have been harmless, as the testimony was largely cumulative of the unobjected-to testimony of Puckett's sisters and Puckett's mom about Austin telling them that Puckett had shot Luther. See Rutledge v. State, 298 Ga. 37, 40 (2) (779 SE2d 275) (2015) (no harm from admission of hearsay that was "largely cumulative" of other properly admitted testimony). Moreover, Puckett himself admitted to

key aspects of Luther's shooting, and the evidence of his guilt was overwhelming. London v. State, 274 Ga. 91, 94 (4) (c) (549 SE2d 394) (2001) (admission of hearsay that was cumulative of other evidence elicited at defendant's trial was harmless in light of overwhelming evidence of defendant's guilt). We find no harm.

Judgment affirmed. All the Justices concur.

Decided May 21, 2018.

Murder. Forsyth Superior Court. Before Judge Bagley.

Debra K. Jefferson, for appellant.

Penny A. Penn, District Attorney, Sandra A. Partridge, Sharon L. Hopkins, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.