305 Ga. 744
FINAL COPY

S19A0068.  JONES v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Willie Jones was found guilty of felony murder, armed robbery, and possession of a firearm during the commission of a felony in connection with the shooting death of Wayman Glenn James, Jr.[1] On appeal, Jones contends that the

---

[1] On July 12, 2011, Jones was indicted along with Shannon Fields, Tavares Lowe, and Ronnie Blue for felony murder predicated on armed robbery, armed robbery, and possession of a firearm during the commission of a felony. Following a December 5-12, 2011 jury trial on the charges against Jones, Fields, and Lowe, Jones was found guilty on all counts. Blue was not tried with Jones and the other co-indictees. On December 13, 2011, the trial court sentenced Jones as a recidivist to life in prison without the possibility of parole for felony murder, a concurrent life sentence for armed robbery, and five consecutive years for possession of a firearm during the commission of a felony. However, because armed robbery was the predicate felony to support the felony murder conviction, the trial court should have merged the armed robbery count into the felony murder count for sentencing purposes rather than sentencing Jones on that count. *Culpepper v. State*, 289 Ga. 736, 737 (2) (715 SE2d 155) (2011) ("When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction.") (citation omitted). The armed robbery conviction therefore must be vacated. See, e.g., *Norris v. State*, 302 Ga. 802, 805 (III) (809 SE2d 752) (2018). Jones filed a motion for new trial on December 16, 2011, which he amended with new counsel on January 23, 2017. Following a November 9, 2017 hearing, the trial court denied the motion on February 5, 2018. Jones filed a

evidence presented at trial was insufficient to sustain his convictions, that the trial court erred by admitting into evidence certain statements made by Jones's non-testifying co-indictees, and that his trial counsel was ineffective. For the reasons that follow, we affirm Jones's convictions for felony murder and possession of a firearm during the commission of a felony, but vacate his conviction for armed robbery, because that count of the indictment should have been merged into the felony murder count for sentencing purposes.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial reveals that, on the night of June 15, 2010, James, the victim, had been drinking with friends on the back porch of Apartment 10 at the Decatur Court Apartments. Jones's co-indictee, Blue, was also on the back porch. Marquis Boodoo, who lived in Apartment 10 with Yolanda Thomas and who knew Jones, testified at trial that he overheard Blue tell Jones's other co-indictee,

timely notice of appeal on March 2, 2018, and his appeal was docketed to the term of this Court beginning in December 2018 and submitted for a decision on the briefs.

Lowe, that James was carrying $3,000 and a 9mm handgun. Thomas, who was also Lowe's cousin, testified that Lowe said that he was going to enlist Jones and Fields to help him rob James. Thomas's sister, Fredericka, overheard Lowe say that the men were going to rob James because James had "stacks [of money] on him." James eventually left the gathering in Apartment 10 to take a nap in Apartment 2, where Shacola Hand lived. An investigating officer later testified at trial that Hand informed him that she had seen James at Apartment 10 that night pulling out money and counting it, and that the money included hundred dollar bills and bills of various other denominations.

In preparation for the robbery, Jones and Fields changed their clothes at an apartment in a different complex, donning all black outfits with black gloves and ski masks. Jones equipped himself with a black and silver shotgun. Christopher Jones, a friend of Jones who was not related to Jones but who was at the apartment at that time, saw Jones leaving the apartment dressed in black and carrying the shotgun. Jones and Fields went to the Decatur Court Apartments,

and Boodoo testified that he saw them talking with Lowe near Apartment 8 shortly before the murder, and that he saw Blue talking with Lowe near Apartment 8 as well; that Fields and Jones were wearing all black; and that Jones was holding a black and silver shotgun.

James, who was sleeping on the couch at Hand's apartment, was roused awake after Blue entered and left the apartment, slamming the door behind him. Blue then flashed a light, which an eyewitness described as something that looked like a signal, and Thomas saw Fields run by her window. Around that same time, James exited Hand's apartment, and, while James was in the parking lot, Jones approached him from behind and shot him once in the back of the head with his shotgun, killing James instantly. Jones and Fields took James's gun and money before fleeing the scene. After the gunshot, Boodoo saw Jones and Fields take money and a gun from James just before they ran from the scene. Although Boodoo already recognized Jones as the one with the shotgun, in his statement to police, he also stated that, as Fields was running away,

he heard Fields say that Jones had shot James. Boodoo also testified that he did not see Fields with a gun at the time of the robbery. Following the murder, Jones fled to Kentucky.

Shortly after the shooting, Thomas overheard a phone call between her sister and Fields in which Fields again stated that Jones shot James. Furthermore, in a statement to police, Jones's friend Christopher informed police that Jones himself admitted to him that Jones was the one who had shot James.

Evidence collected by police from the apartment where Jones had changed into his all-black outfit earlier in the night included a black and silver 12-gauge shotgun, a pistol, a black ski mask, black pants and a belt with an attached holster, a black shirt, black gloves, a black baseball cap, black sneakers, and an identification card with Jones's information. Additionally, police discovered that the firing pin on the right side of the double-barreled shotgun had been punctured, but that the left one had not been, indicating that the gun had been fired once. Jones was arrested in Kentucky a little over a year after the murder.

The evidence presented at trial was sufficient to authorize a rational jury to find Jones guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Jones contends that the trial court erred by allowing into evidence at trial the hearsay statements made by Jones's non-testifying co-indictees, Blue, Lowe, and Fields. He claims that the statements were improperly admitted before a conspiracy between the four men had been shown at trial in order to make their statements admissible under the co-conspirator exception to the rule against hearsay. See former OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.").[2] We disagree.

Co-conspirator "hearsay statements are admissible when the State *at some point before the close of evidence* establishes a prima

---

[2] Because this case was tried before the January 1, 2013 effective date of Georgia's new Evidence Code, the old Evidence Code applies.

facie case of conspiracy independent of the co-conspirator statement." (Citations omitted; emphasis supplied.) *Thorpe v. State*, 285 Ga. 604, 610 (5) (678 SE2d 913) (2009).

> [T]he State need not make out a prima facie case of conspiracy *prior* to introduction of the statements; the statements are admissible when the State establishes a prima facie case of conspiracy independent of the co-conspirator's statement at any time before the close of evidence.

(Citation omitted; emphasis in original.) *Williams v. State*, 293 Ga. 750, 753 (2) (749 SE2d 693) (2013).

> In order for a conspiracy to exist, there must be an agreement between two or more persons to commit a crime. Such agreement need not be express, nor does it require a "meeting of the minds" to the same degree necessary to form a contract; all that is required is a tacit mutual understanding between persons to pursue a common criminal objective.

(Citations and punctuation omitted.) *Griffin v. State*, 294 Ga. 325, 327 (751 SE2d 773) (2013). Such "a conspiracy may be shown by direct proof, or by inference, deduced from acts and conduct, which discloses a common design to act in concert for the accomplishment of the unlawful purpose; the common design or purpose may be

shown by direct or circumstantial evidence." *Williams*, supra, 293 Ga. at 753 (2).

As an initial matter, because Jones clearly objected to some, but not necessarily all, of the alleged hearsay statements about which he now complains on appeal, under the law applicable to cases governed by Georgia's old Evidence Code, his arguments relating to those statements of his co-conspirators to which he did not clearly object would be waived on appeal. See *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). However, we need not parse through each individual statement to address the issue of waiver because, even if Jones had clearly objected to all of the statements, they were properly admissible under the co-conspirator exception to the rule against hearsay or were otherwise cumulative of other properly admitted evidence. Specifically, the State sufficiently proved the existence of a conspiracy between Jones and his co-indictees to rob and possibly shoot James through evidence independent of the statements made by Blue, Lowe, and Fields. In this regard, soon after Blue and Lowe were seen at a party where James was also

present, Jones and Fields went to a different apartment to change into all-black outfits and retrieve a silver and black shotgun. Upon returning to the Decatur Court Apartments, Jones and Fields got together with Lowe near Apartment 8, where Lowe had been speaking with Blue, and Blue went to Apartment 2 to lure James outside. Blue continued to act in concert with the other co-indictees by flashing a light that served as a signal for Jones and Fields to approach James from behind just before they killed and robbed him.

The statements by Blue and Lowe about James having money and about wanting to rob him were made in furtherance of the conspiracy to attack and rob James, as was Lowe's statement that he would recruit Jones and Fields to assist in the robbery. Because the State sufficiently proved the existence of a conspiracy between the co-indictees independent of these statements, we find no error in the admission of the statements into evidence. See, e.g., *Folston v. State*, 294 Ga. 778 (2) (755 SE2d 803) (2014).[3] With regard to Fields's

---

[3] With respect to Blue's statement about James having $3,000 on him, the trial court actually instructed the State to make sure that no mention of it

statements about Jones being the shooter, even if these statements were inadmissible under the co-conspirator exception, the admission of this evidence was nevertheless harmless, as it was largely cumulative of Boodoo's testimony identifying Jones as the one with the shotgun who stole money from James — the man who had just been shot in the back of the head with a shotgun — while Fields was at the scene without a gun. See *Rutledge v. State*, 298 Ga. 37 (2) (779 SE2d 275) (2015). In this regard, the evidence was also cumulative of Christopher's statement to police that Jones admitted to him that Jones was the shooter.

3. Jones contends that his trial counsel was ineffective for failing to object or move for a mistrial in response to the State eliciting hearsay testimony about statements made by Blue in

would be made at trial in an effort to prevent this testimony from being admitted. However, the evidence still ended up coming in after the State asked Boodoo about Blue speaking with Lowe. Although the prosecutor was admonished outside the presence of the jury about eliciting this testimony, defense counsel for Lowe and Fields ultimately agreed with the trial court that no further action needed to be taken in front of the jury. See also discussion in Division 3, infra. In any event, Blue's statement was admissible under the co-conspirator exception to the rule against hearsay.

violation of the trial court's instruction that the State make no reference to such statements.[4] We disagree.

> In order to succeed on his claim of ineffective assistance, [Jones] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State,* 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State,* 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State,* 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Although Blue's statements were admissible under the co-conspirator exception to the rule against hearsay (see Division 2,

---

[4] To the extent that Jones argues that his trial counsel was also ineffective for failing to object to the admission of Lowe's alleged hearsay statements, which were not subject to any sort of instruction from the trial court that such statements should not be admitted, his argument fails, as Lowe's statements were properly admitted into evidence at trial under the co-conspirator exception to the rule against hearsay (see Division 2, supra) and an objection to their admission would have been meritless. See *Wesley v. State,* 286 Ga. 355 (3) (b) (689 SE2d 280) (2010) (trial counsel cannot be ineffective for failing to make a meritless objection).

supra), that does not change the fact that, in this particular case, the trial court instructed the State not to elicit testimony from Boodoo about anything that Blue allegedly said to Lowe. When the State nevertheless elicited testimony from Boodoo in which Boodoo stated that Blue told Lowe that James had $3,000 in cash on him, counsel for Lowe and Fields objected and moved for a mistrial, whereas Jones's counsel did not. The trial court initially agreed with counsel for Lowe and Fields that it would grant a mistrial, but, after further discussion between counsel for Lowe, Fields, and Jones outside of the presence of the jury, counsel for Lowe and Fields changed their minds, deciding instead that an admonishment of the State outside of the presence of the jury would be sufficient.

When questioned at the motion for new trial hearing about the matter, counsel for Jones testified that he was willing to go along with counsel for Lowe and Fields regarding the handling of the motion for a mistrial, as he discussed the matter with them; counsel for Lowe and Fields believed that the trial was going well; and they also believed that the defendants would not necessarily get a better

jury in a retrial of the case. Counsel for Jones further agreed with counsel for Jones's co-indictees that an admonishment of the State was an appropriate remedy at the time rather than potentially drawing more attention to the issue by having the court give a curative instruction to the jury.

Here, the "strategic decision not to draw the jury's attention to [Blue's statement about James having $3,000] by declining a curative instruction was within the wide latitude of presumptively reasonable professional conduct engaged in by trial attorneys." (Citation and punctuation omitted.) *Brewer v. State*, 301 Ga. 819, 821 (3) (804 SE2d 410) (2017). Counsel for Jones did not have to move for a mistrial simply because counsel for Lowe and Fields initially did so. And, in any event, even counsel for Lowe and Fields, like counsel for Jones, ultimately adopted the reasonable strategy of trying to minimize the impact that Boodoo's testimony may have had on the jury rather than drawing more attention to it. The fact that, with the benefit of hindsight, counsel for Jones may have made a different decision is of no consequence, as "'hindsight has no place

in an assessment of the performance of trial counsel,' and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." (Citation omitted.) *Shaw v. State*, 292 Ga. 871, 876 (3) (a) n.9 (742 SE2d 707) (2013). It cannot be said "that no competent attorney would have chosen [the strategy adopted by Jones's counsel here at the time of Jones's trial]." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided May 6, 2019.

Murder. Muscogee Superior Court. Before Judge Mullins.

Brown & Gill, Angela B. Dillon, for appellant.

Julia F. Slater, District Attorney, Veronica Hansis, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant

<u>Attorney General</u>, for appellee.