NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 20, 2024

S24A1327. PARKER v. THE STATE.

PETERSON, Presiding Justice.

Stefan Parker appeals his convictions related to the shooting death of Shelbra Lee Stallings.[1] On appeal, Parker argues that the evidence was insufficient to disprove his claim of self-defense, the trial court erred in denying his trial counsel's motion to withdraw as counsel, the court erred by admitting a book entitled "The 48 Laws of Power," and he received ineffective assistance of counsel for

---

[1] The crimes occurred on February 28, 2021. In November 2021, a Rockdale County grand jury indicted Parker for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a crime. A jury found Parker guilty on all counts at a March 2023 trial, and the trial court sentenced him to life in prison for malice murder and a consecutive five-year term for the firearms offense. The remaining counts were merged or vacated by operation of law. Parker filed a motion for new trial in June 2023, which he later amended. The trial court denied the motion in April 2024 following a hearing. Parker timely filed a notice of appeal, and the case was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

stipulating to the authenticity of evidence that showed his presence at the crime scene. We conclude that the evidence authorized the jury to reject Parker's self-defense claim, the trial court did not commit reversible error in denying counsel's motion to withdraw or admitting the book into evidence, and Parker has not shown that counsel was ineffective for stipulating to the authenticity of evidence that was consistent with Parker's self-defense claim. We therefore affirm.

Viewed in the light most favorable to the verdicts, the trial evidence showed the following. On the morning of February 28, 2021, Parker and his cousin, Michael Walker, made a trip from Walker's workplace to Stallings's residence in Rockdale County and then back to Walker's workplace. They travelled in Walker's gray 2013 Acura RDX, leaving at 8:23 a.m. and returning at 8:45 a.m. Upon returning to Walker's workplace, Walker went inside to begin his shift, letting Parker use his vehicle.

Parker admitted at trial that he returned to Stallings's residence alone. Surveillance cameras from a house across the street

2

recorded the following. A dark-colored SUV drove down the road, and then a male in a gray hooded sweatshirt, dark pants, and white shoes walked across Stallings's front yard from the direction where the SUV had driven. Shortly thereafter, there was a sound of approximately eleven gunshots, and the same male ran across the front yard of the residence toward the SUV. At least two neighbors heard the gunshots. One neighbor saw a male in a gray hooded sweatshirt walking quickly towards a gray Acura SUV and saw the vehicle leave. Another neighbor saw a man in a gray hooded sweatshirt running across Stallings's yard and carrying a gun that had the handle wrapped in a plastic bag.

Police arrived shortly after and found Stallings lying on her back in her carport and blood pooling around her. Stallings died from four gunshot wounds. Police searched Stallings's residence, recovering nine 9mm casings in the carport and front yard. Police did not locate any firearms or ammunition inside. Police located a bullet and a bullet fragment at the scene, and a medical examiner found two bullets inside Stallings's body during the autopsy.

Police interviewed Donald Harris, Stallings's boyfriend, later that day, and Harris was "crying" and "very emotional" about the shooting. Harris testified at trial that he was sleeping at Stallings's residence at the time of the shooting, was awakened by the gunshots, but went back to sleep because people had hunted previously in the area behind Stallings's house.

Police also talked to Stallings's son. After being told about the Acura, Stallings's son identified Walker as a suspect, as Walker had previously sold marijuana to Stallings and him. Police investigated but learned that Walker had an alibi, as surveillance footage showed him at work at the time of the shooting.

Police discovered that a GPS tracker had been installed on Walker's vehicle and, accessing that system, located the vehicle at an apartment complex in Decatur. Police eventually found Parker in an apartment, detained him, and obtained consent to search the apartment. During the search, police found a backpack in a hall closet; the backpack contained a Taurus 9mm handgun with an empty extended magazine and a book entitled "The 48 Laws of

Power." A GBI firearms examiner determined that the recovered handgun fired all nine casings found at the crime scene and one of the bullets found in Stallings's body.[2]

During a custodial interview that was recorded and played for the jury, Parker denied any involvement in the shooting and claimed that Walker was the shooter and was wearing Parker's clothing at the time. But at trial, he admitted that he had lied to police about his involvement, admitted that he shot Stallings, and claimed that he did so in self-defense. Parker stated that during the initial trip to Stallings's residence, Walker got out of the vehicle and talked to someone at the door. Parker said that he went back to the residence to get money that Walker forgot. Parker also testified that he was wearing the clothing shown in the surveillance videos and was carrying the murder weapon.

According to Parker, when he got to Stallings's residence the second time, he knocked on the front door and went to the side door

---

[2] The other bullet found in Stallings's body was "very damaged," so the firearms examiner was unable to determine whether it was also shot by the Taurus.

when he heard it open. Parker saw a male, whom he identified as Harris, stick his head out and say something angrily. Parker said that Harris then exited the residence with a firearm, followed by Stallings. When Harris began to raise his firearm, Parker began firing his gun and continued to fire as he ran back to the Acura. Parker said that Harris definitely fired a shot. Parker also stated, however, that because "it happened so quick," he did not really know if Harris raised a firearm. Parker said that he did not report the shooting and had lied to police during his interview because he was scared. Although Parker maintained that he remained scared at the time of the police interview, he testified that he did not hide the murder weapon because he did nothing wrong.

In rebuttal testimony, Harris denied ever seeing Parker prior to trial, pointing a firearm at Parker, or seeing the shooting.

1. Parker argues that the evidence was insufficient to convict him because the State failed to disprove his self-defense claim beyond a reasonable doubt. We disagree.

When we consider whether the trial evidence was sufficient as

6

a matter of federal due process, "we view the evidence in the light most favorable to the verdict and evaluate whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Davenport v. State*, 309 Ga. 385, 388 (1) (846 SE2d 83) (2020) (citing *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979)). In conducting that review, "[w]e put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Goodman v. State*, 313 Ga. 762, 766-767 (2) (a) (873 SE2d 150) (2022) (citation and punctuation omitted).

"When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Williams v. State*, 316 Ga. 147, 150 (1) (886 SE2d 818) (2023) (citation omitted). But "[i]t is the role of the jury to evaluate the evidence and, when doing so, the jury is free to reject any evidence in support of a justification defense and to accept the evidence that the [act] was not done in self-defense."

Id. (citation and punctuation omitted); see also *Gibbs v. State*, 309 Ga. 562, 565 (847 SE2d 156) (2020) ("[T]he question of justification . . . is for the jury to decide.").

We conclude that the trial evidence was sufficient to sustain the verdicts. Parker admitted that he shot Stallings, but claimed that he did so only in response to a purported threat from Harris. His claim was based solely on his testimony, which the jury was authorized to reject. Parker's testimony was self-contradictory, claiming at one point that Harris definitely fired a shot and at another saying that he was not even sure if Harris raised a gun. Parker's testimony also conflicted with Harris's testimony that he did not point a gun at Parker and had not even seen Parker prior to trial. And despite Parker's claim that Harris fired a shot, the only shell casings recovered from the crime scene were linked to Parker's gun. Under these circumstances, the jury was authorized to find Parker not credible, resolve conflicts in the evidence against him, and find him guilty of the crimes of which he was convicted. See *Taylor v. State*, 303 Ga. 624, 626 (1) (814 SE2d 353) (2018) ("It is the

role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (citation and punctuation omitted)).

2. Parker argues that the trial court erred in denying trial counsel's motion to withdraw as attorney of record. We disagree.

Trial counsel filed a motion to withdraw as counsel on February 28, 2022. At a hearing on March 1, 2022, the prosecutor represented that the case had been continued from the court's January and February motions calendars, first for the State to finalize the discovery it had sent to counsel, and then to allow counsel adequate time to review the "voluminous discovery." Trial counsel confirmed that it was "a lot of data" in discovery, but said Parker consented to his withdrawal, and said he believed Parker qualified for indigent defense. Trial counsel argued that new counsel would have plenty of time to prepare for trial. The prosecutor noted in response that the case was set for a May trial, so new counsel would have a "voluminous amount of work" to do to "catch up," and

9

that even trial counsel conceded that there was a "considerable amount" of discovery.

When asked why Parker was interested in appointed counsel when he had hired counsel, trial counsel said that, although Parker had originally been appointed counsel, Parker's mother paid to retain trial counsel, that Parker had no assets or income of his own, and the family was unable to keep "their end of [the] fee arrangement," which was why he was seeking a withdrawal. Parker told the court that he "ran out of money" since he had been incarcerated for about a year and his mother could not afford to continue paying the fees. Trial counsel said he was "[a]bsolutely" more than willing to share the discovery with new counsel. The court took the matter under advisement, and later denied the motion without explanation. In reconsidering this issue as a part of Parker's motion for new trial, the court concluded that it did not err in denying the motion to withdraw because granting it would have unnecessarily delayed the trial.

Parker argues that the trial court made no findings in initially

denying counsel's motion to withdraw representation and that there was no basis for the court's retroactive finding that procuring new counsel would unnecessarily delay the trial. Neither of these arguments prevail.

The decision whether to grant a motion to withdraw representation falls within the sound discretion of the trial court. See, e.g., *Rouse v. State*, 275 Ga. 605, 608-609 (9) (571 SE2d 353) (2002); *White v. State*, 365 Ga. App. 101, 104-105 (877 SE2d 649) (2022).

> Under the abuse-of-discretion standard, the trial court is afforded substantial deference that allows for a range of permissible outcomes, as long as that discretionary decision is based on a correct understanding of the law and facts. Accordingly, those findings will generally not be disturbed as long as they are within the bounds of the law, based on correct, relevant facts, and within the range in which reasonable jurists could disagree.

*Burns v. State*, ___ Ga. ___, ___ (2) (907 SE2d 581) (2024) (citation and punctuation omitted). An attorney's request to withdraw will be granted unless the judge determines that doing so "would delay the trial or otherwise interrupt the orderly operation of the court[.]"

11

Uniform Superior Court Rule 4.3 (1).

To the extent Parker argues that the trial court's initial determination was erroneous because it did not include express findings of fact or conclusions of law, this argument fails because Parker points to no authority mandating a detailed order in this context. Parker's main argument is that the trial court's later finding is not supported by the record, but that too fails. Trial counsel did not challenge the prosecutor's representations at the hearing that the discovery in this case was voluminous; indeed, trial counsel stated that there was a "considerable amount" of it. Given that trial counsel's request to withdraw came two months before the trial was scheduled to start, the trial court did not abuse its discretion in concluding that granting the request would delay the trial. See *Rouse*, 275 Ga. at 608-609 (9) (upholding the trial court's decision to deny a motion to withdraw, in part, because it "was filed within two months of the scheduled trial date").

3. Parker argues that the trial court erred in admitting into evidence the book entitled "The 48 Laws of Power." Parker argues

that the evidence was not relevant to the issue of whether Parker murdered Stallings, and even if relevant, its low probative value was substantially outweighed by the danger of unfair prejudice. We conclude that even if the court abused its discretion in admitting the book into evidence, any such error was harmless.

A trial court's non-constitutional evidentiary error requires reversal of a defendant's conviction "unless it can be deemed harmless, meaning that it is highly probable that the error did not contribute to the verdict." *Heard v. State*, 309 Ga. 76, 90 (3) (g) (844 SE2d 791) (2020) (citation and punctuation omitted). "In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done[.]" *Jackson v. State,* 306 Ga. 69, 80 (2) (c) (829 SE2d 142) (2019) (citation omitted).

Here, the admission of the book likely made very little difference in the jury's assessment of the evidence. As recounted above, the evidence of guilt was strong, if not overwhelming. Parker admitted to shooting Stallings, and his claim of self-defense was

13

very weak. Parker points to no portion of the book that was particularly prejudicial. Although the State argued to the court that the book was basically an instruction manual on how to deceive and manipulate people, and that Parker's actions reflected an intent to deceive the police and the jury, there is nothing in the record indicating that the State made this argument to the jury or otherwise focused on the contents of the book at trial. The only mention of the book before the jury was the prosecutor identifying it as having been found in the backpack that also contained the murder weapon.[3] Even if the book was relevant to Parker's credibility, the book likely had very little impact compared to Parker's inconsistent statements and contradictory testimony. The jury could assess Parker's credibility and reject his self-defense claim independent of Parker's possession of the book. Because the evidence of guilt was strong and the book had very little prejudicial force, any error in admitting the book is not a basis for reversal. See

---

[3] Although the book did go out with the jury during its deliberations, the State did not mention the book during its closing argument.

14

*Jivens v. State*, 317 Ga. 859, 863-865 (2) (896 SE2d 516) (2023) (any error in admission of demonstrative photographs of model firearms was harmless given the compelling evidence of guilt and the limited prejudicial effect from the photographs); *Puckett v. State*, 303 Ga. 719, 720-721 (2) (814 SE2d 726) (2018) (any error in admitting a photograph showing several crime books on the defendant's bookshelf was harmless given the overwhelming evidence of guilt); *Williams v. State*, 302 Ga. 147, 155 (4) (805 SE2d 873) (2017) (any error in allowing the State to engage in a demonstration regarding the crime was harmless, as any effect that the demonstration may have had on the jury "would have been minimal compared to the effect of the properly-admitted evidence before it").

4. Parker argues that trial counsel was ineffective for entering into several stipulations regarding the authenticity of evidence that showed Parker's movements on the day of the crime and placed him in the Acura. Parker argues that counsel's lack of investigation and his entering into stipulations resulted in the admission of overwhelming evidence of Parker's travels to and from and presence

15

at the crime scene. Parker argues that the jury would have been more likely to acquit Parker without these stipulations. This claim has no merit.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced him. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). Deficient performance means that "no reasonable lawyer would have done" what trial counsel did, while prejudice means there is a reasonable likelihood that the outcome of the trial would have been different but for the deficient performance. *Wells v. State*, 295 Ga. 161, 164 (2) (a) (758 SE2d 598) (2014). A defendant claiming that his counsel was underprepared must show that more preparation "might have produced [something] that would have made a difference in the outcome of his trial." *Roberts v. State*, 305 Ga. 257, 266 (5) (c) (824 SE2d 326) (2019) (citation omitted).

Parker makes no showing that any of the evidence in question — surveillance recordings, a GBI fingerprint report, and GPS data

from the Acura — was inadmissible. Trial counsel explained at the motion for new trial hearing that he had no reason to question the authenticity of the evidence, the stipulations were "partly a housekeeping matter," and he had no reason to believe the relevant witnesses would fail to show up at trial to authenticate the evidence in question. Trial counsel stated that Parker understood the stipulations and consented to them. Trial counsel also explained that the stipulated evidence was consistent with Parker's version of events and self-defense claim. By challenging these stipulations, Parker seems to suggest that counsel should have presented an alternative defense that he was not present for the shooting. But such a defense would not have been supported by the evidence and was contrary to his self-defense claim, a defense that Parker had discussed with counsel prior to trial as part of a review of his potential trial testimony. See *Gaston v. State*, 307 Ga. 634, 637 (2) (a) (837 SE2d 808) (2020) ("[I]t is rarely an unreasonable strategy to not pursue defenses that logically conflict."). Because Parker has not shown that any of the evidence would have been inadmissible had

17

counsel not stipulated to its authenticity, and the evidence in question was consistent with his self-defense claim, Parker cannot establish that no reasonable attorney would have stipulated to the evidence's authenticity. Accordingly, his ineffective assistance claim fails.

*Judgment affirmed. All the Justices concur.*