**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 19, 2025**

# In the Court of Appeals of Georgia

A25A1328. RAMIREZ v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Javier Ramirez was convicted of first degree homicide by vehicle,[1] reckless driving,[2] failure to wear a seat belt,[3] having an improperly altered truck suspension,[4] and having an improper muffler exhaust system.[5] He now appeals from the denial of his motion for new trial, contending that (1) the trial court erred by

---

[1] OCGA § 40-6-393 (a).

[2] OCGA § 40-6-390 (a). The reckless driving count was merged into the vehicular homicide count.

[3] OCGA § 40-8-76.1 (b).

[4] OCGA § 40-8-6.

[5] OCGA § 40-8-71.

denying his motion to suppress evidence obtained pursuant to a search warrant application containing a falsehood; (2) the trial court erred by allowing an officer to testify as an expert with respect to the data retrieved from an event data recorder ("EDR") in his vehicle; and (3) his trial counsel was ineffective for failing to object to the admission of the EDR itself. Discerning no reversible error, we affirm.

Construed in favor of the verdict,[6] the evidence shows that at approximately 10:25 p.m., Norma Ramgopal was stopped at a red light in the left lane of a divided highway in Gwinnett County. A black truck arrived at the light next to her, in the right lane. Immediately behind the black truck was a white truck, driven by Ramirez, that was "tall." As they waited, the black truck began revving its engine, "making that vroom, vroom" sound, according to Ramgopal. When the light turned green, the black truck "took off at a very high speed," with the white truck following "at a very high speed" estimated by the witness to be approximately 80 miles per hour in the 35 mile per hour speed zone. The white truck then moved into the left lane, and according to Ramgopal, "they're both going at very high speeds," driving competitively. The black

---

[6] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). Ramirez does not challenge the sufficiency of the evidence, but we summarize the relevant events for context.

truck cut the white truck off, "and that's when the white truck proceed[ed] to move to the right lane," as they both approached a driveway entrance to an Arby's restaurant, where a sedan was in the process of entering the roadway. The white truck collided violently with the sedan, ejecting an occupant. The black truck fled the area;[7] the sedan occupant was transported to a hospital but later died of his injuries.

Ramirez's damaged vehicle was impounded. Pursuant to a search warrant, police retrieved the EDR from his truck and obtained the data it had recorded.[8] The white truck's EDR data reflected that it was traveling at 88 miles per hour before colliding with the sedan.[9]

Based on these events, Ramirez was charged with first degree homicide by vehicle, reckless driving, failure to wear a seat belt, improper alteration of his

---

[7] The driver of the black truck was identified later through business surveillance cameras and admitted to committing second degree homicide by vehicle, among other crimes.

[8] The EDR, also called an "airbag control module," is a device installed by the vehicle manufacturer that records data including vehicle speed and brake and throttle application five seconds before an airbag deploys.

[9] This figure included a calibration by police to account for the increased circumference of the truck's aftermarket tires. The uncalibrated number was 80 miles per hour.

suspension, a spotlight violation, and having an improper muffler exhaust system. Ramirez moved to suppress the evidence obtained from the search of his truck pursuant to the search warrant, and he moved in limine to exclude testimony by the officer who extracted the EDR data. Following a pretrial evidentiary hearing, the trial court denied both motions. The jury then found Ramirez guilty on all counts, except the spotlight violation. Ramirez now appeals.

1. Ramirez contends that the trial court erred by denying his motion to suppress the evidence obtained pursuant to the search warrant because, he argues, the warrant application contained a material false statement. Specifically, he argues that the affidavit supporting the warrant application falsely stated that "a witness on the scene completed a witness affidavit claiming the [white truck] was racing another vehicle," which would be a crime.[10] Because a sufficient portion of this statement was true and supported a finding of probable cause, this enumeration is without merit.

To be valid, a warrant must be "based upon an oath or affirmation stating facts sufficient to show probable cause that a crime is being committed or has been

---

[10] See OCGA § 40-6-186 (a) (2) (prohibiting driving in a manner attempting "to outgain, outdistance, or prevent another vehicle from passing, [or] to arrive at a given destination ahead of another vehicle").

committed."[11] We review a probable cause determination "by considering the totality of the circumstances to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant."[12]

The basic rule at issue here pertains to alleged falsehoods in warrant applications.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request[, as was done here.] . . . *[I]f a preponderance of the evidence at the hearing supports a finding of intentional or knowing falsehood or reckless disregard for the truth, the trial court must then view the affidavit with its false material set to one side, and if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided* and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.[13]

---

[11] (Punctuation omitted.) *State v. Britton*, 316 Ga. 283, 286 (1) (888 SE2d 157) (2023), quoting OCGA § 17-5-21 (a).

[12] (Punctuation omitted.) *Britton*, 316 Ga. at 287 (1).

[13] (Punctuation omitted; emphasis supplied.) Id. at 288 (2), quoting *Franks v. Delaware*, 438 U. S. 154 (98 SCt 2674, 57 LE2d 667) (1978).

Here, the affidavit in the warrant application stated as follows:

> On 8/1/2022 the vehicle listed above . . . was traveling eastbound on [Braselton Highway.] A [sedan] was exiting a parking lot on the south side of the roadway. The driver of the [white truck] claimed he was in the right straight lane behind another vehicle, and the [sedan] entered the roadway in front of him. Tire marks on the roadway indicate the [white truck] was straddling both the right and left straight lanes when he began braking. A collision ensued and the driver of the [sedan] was ejected from his vehicle. After being transported to [the hospital], he succumbed to his injuries and died. *A witness on scene completed a witness affidavit claiming the [white truck] was racing another vehicle.*[14]
>
> This search warrant will serve to obtain the saved electronic information from the [white truck], in hopes of assisting with the collision reconstruction.

Thus, the allegation of racing was material to demonstrating that the white truck was driving in an unlawful way, which would be evinced by data from the EDR.

At the suppression hearing, the responding officer who completed the warrant application testified that the emphasized portion above contained a partial misstatement. He explained that the eyewitness claimed that the trucks were racing,

---

[14] (Emphasis supplied.)

but he clarified that instead of making that claim in a written affidavit, the eyewitness had actually spoken to the officer (as recorded by his body camera and played for the court) and personally told the officer that the trucks were racing. Thus, the officer conceded that he had made "a clerical error" by stating that "it was written [in an affidavit] and not [orally] stated."

Assuming without deciding that the officer's error was a knowing falsehood or reckless disregard for the truth, the record supports the trial court's finding that the remaining portion of the challenged statement — that an eyewitness told police that the trucks were racing — was true. And such a statement to an officer by an eyewitness would support a finding of probable cause that the trucks were racing or driving recklessly, particularly in light of the affidavit's other unchallenged statements that (i) the white truck's skid marks straddled the lane divider, and (ii) the severity of the collision as resulted in an ejectment and fatality.[15]

As a reviewing court, we owe substantial deference to a magistrate's decision regarding the issuance a search warrant, which "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit

---

[15] Cf. *Britton*, 316 Ga. at 290-291 (3) (noting that an eyewitness's statement to police can support a finding of probable cause).

before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in a particular place."[16] Based on this common-sense standard, the difference between a written affidavit and a statement to an officer by an eyewitness at the scene does not deprive the warrant application of a substantial basis for finding probable cause to believe that the white truck was involved in racing or reckless driving sufficient to justify the search of its EDR data.[17] Whether sworn or not, the statement was made by a disinterested eyewitness on the roadside in the context of the immediate police response to a vehicle collision shortly after the witness watched the collision. Based on this, and the other information in the warrant application, the trial court did not err by finding the application sufficient to support the issuance of the warrant.

2. Ramirez next argues that the trial court erred by denying his motion in limine to exclude an officer from providing expert testimony as to the reliability and results

---

[16] (Punctuation omitted.) Id. at 286 (1). See also *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009), quoting *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997).

[17] See *Palmer v. State*, 310 Ga. 668, 673-674 (2) (a) & (b) (853 SE2d 650) (2021) (applying "common-sense" standard and concluding "that the affidavit's remaining content was sufficient to establish probable cause") (punctuation omitted).

of the EDR data, citing OCGA § 24-7-702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[18] Specifically, he argues that the officer "was allowed to present . . . raw data as finished fact" without adequate reliability.[19] We discern no basis for reversal.

Under OCGA § 24-7-702 (b),

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based upon sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and

---

[18] 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993). This standard was made applicable to criminal cases in Georgia in 2022. See *Garrison v. State*, 319 Ga. 711, 725 (3) (b) (905 SE2d 629) (2024).

[19] Ramirez does not make a challenge on hearsay or Confrontation Clause grounds.

(4) The expert has reliably applied the principles and methods to the facts of the case.

In determining the admissibility of expert testimony under the *Daubert* standard, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. And the trial court examines reliability through a consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. The determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion.[20]

Here, Ramirez argues that the officer "merely parroted the [EDR] data, which masqueraded as finished fact." But the officer did not just recite the data recorded by the EDR. He began by explaining his qualifications to present the data, testifying that he had specific training and experience in the methods of accident reconstruction and retrieving EDR data. He explained what data the EDR recorded, what tools he used

---

[20] (Citations and punctuation omitted.) *Arnold v. State*, 321 Ga. 434, 450 (3) (915 SE2d 576) (2025).

to retrieve it, and how the data was presented, including defining the terminology. Thus, as far as the officer's training and ability to present the data, Ramirez has not demonstrated an abuse of the trial court's discretion in recognizing the officer's ability as such an expert.

With respect to the reliability of the speed data, the officer testified that based on his training and experience, the methods he used, including relying on the EDR data, were reliable. He explained that in addition to relying on the EDR data, other observations "helped [him] arrive at some of these conclusions:" he personally examined nearby security camera footage, the roadway, the condition of the vehicles involved, the debris field, and the skid marks and gouges in the roadway. He explained why, based on the roadway evidence, there was no indication that a wheel or tire malfunction had impacted the reliability of the EDR data. The officer further testified that although he did not verify the EDR speed data through a complete "manual" reconstruction "the old fashioned way," he nevertheless testified that the EDR data were "consistent with the crash scenario" overall. Finally, the officer explained that all of his findings were peer reviewed by other trained and experienced members of his accident investigation unit, including a senior officer.

In sum, beyond merely presenting the EDR data, the officer interpreted and explained the data, applying his experience, training, and examination of the scene, and his opinion was reviewed by his peers. This record supports the trial court's exercise of discretion to admit the officer's testimony:

> Trial courts may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not—in its view—particularly strong or persuasive. Rather, the weight to be given to admissible expert testimony is a matter for the jury. Ultimately, courts must remain cautious not to improperly use the admissibility criteria to supplant the sacrosanct right to a jury trial because vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. When applying Rule 702, the trial court has broad discretion to accept or reject the qualifications of an expert witness. . . .[21]

Accordingly, this enumeration is without merit.

---

[21] (Citations and punctuation omitted.) *Wright v. State*, 374 Ga. App. 28, 31-32 (910 SE2d 839) (2024) (holding that a trial court erred by excluding testimony from a witness qualified as a pharmacology expert because the witness's opinion was not reliable).

3. Last, Ramirez contends that his trial counsel rendered ineffective assistance to the extent that his failure to object to the admission of the physical EDR unit amounted to a waiver of the admission of its data. We disagree.

Under *Strickland v. Washington*,[22] to prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced him.[23] "Deficient performance means that no reasonable lawyer would have done what trial counsel did, while prejudice means there is a reasonable likelihood that the outcome of the trial would have been different but for the deficient performance."[24] If [a defendant] fails to show either prong of the *Strickland* test, we need not examine the other prong.[25]

Based on our holdings herein, this enumeration provides no basis for reversal because Ramirez has not shown that an objection to admitting the EDR would have

---

[22] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[23] Id. at 687 (III).

[24] (Punctuation omitted.) *Parker v. State*, 320 Ga. 572, 579 (4) (910 SE2d 580) (2024).

[25] See *Terrell v. State*, 313 Ga. 120, 130 (5) (868 SE2d 764) (2022).

been successful, and his trial counsel's failure to pursue this futile course does not constitute ineffective assistance of counsel..[26]

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[26] See *Hill v. State*, 310 Ga. 180, 192-193 (8) (b) (850 SE2d 110) (2020) (failure of counsel to assist in way that "would have been fruitless . . . did not constitute deficient performance"); *Matiatos v. State*, 301 Ga. App. 573, 575 (2) (a) (688 SE2d 385) (2009) (same).